## I.      INTRODUCTION

Plaintiff Victor Callender files this Memorandum of Law in Opposition to the Motion for Partial Summary Judgment of Defendant Forster and Garbus, LLP ("F&G" or "Defendant"), DE 49.

## II.     PROCEDURAL HISTORY

Plaintiff filed the original complaint in this action on July 24, 2015 alleging Defendant F&G violated the Fair Debt Collection Practices Act by, *inter alia*, garnishing Mr. Callender's wages based on a vacated sewer service judgment. [DE 1].  On November 6, 2015 Plaintiff filed a First-Amended Complaint [DE 19] adding Discover Bank, the putative judgment creditor on whose behalf F&G was executing, as a Defendant for conversion for exercising dominion and control over Mr. Callender's wages without a legal right to do so.  The conversion claim was also added against F&G.  Plaintiff also added a N.Y. Gen. Bus. Law § 349 claim against F&G. On December 10, 2015, Defendant F&G filed an answer. [DE 29]. On March 3, 2015 Plaintiff voluntarily dismissed Discover Bank pursuant to a settlement that retained Plaintiff's claims against F&G.

The parties have now filed cross-motions for partial summary judgment. On December 9, 2016 Plaintiff filed DE 52, a motion seeking summary judgment for liability as to his FDCPA claims.   Also on December 9, 2016, Defendant filed a motion for partial summary judgment as to liability under GBL 349, and as to punitive damages for conversion and GBL 349.

## III.    PRELIMINARY STATEMENT

Defendant does not move for summary judgment on the issues of conversion or FDCPA liability. Rather, Defendant moves for summary judgment on Plaintiff's GBL 349 claim and claim for punitive damages for violations of GBL 349 and for conversion. Moreover, Defendant does not contend that punitive damages are unavailable for violations of GBL 349 and

conversion. Defendant's sole argument for summary judgment on Plaintiff's claim for punitive damages is that Plaintiff cannot, as a matter of law, meet the requisite standard for punitive damages under New York law. Thus, regardless of the outcome of the parties cross motions for summary judgment, this case is poised to go to trial for Plaintiff's FDCPA claims—either solely as to damages or for liability and damages—and as to both liability and actual damages for conversion.[1]

In order to establish a claim for violation of GBL 349, a Plaintiff must demonstrate Defendant's conduct was 1) consumer oriented, 2) "deceptive or misleading," and 3) caused Plaintiff injury.

As an initial matter, Defendant contends that Plaintiff's GBL § 349 claim is precluded by GBL 601, a state statute relating to debt collection abuse. Defendant argues – and Plaintiff agrees -- that a violation of GBL 601 does not "necessarily constitute" a violation of GBL 349. However, neither does 601 preclude a GBL 349 claim. Rather, the Plaintiff must plead and prove each of the three GBL 349 elements independently of 601, which Mr. Callender has done. Defendant ignores this distinction.

Defendant then contends Plaintiff has not met any of the GBL 349 elements.  Defendant contends Plaintiff's GBL 349 claim alleges that Defendant intentionally executed on a judgment that Defendant knew was vacated.  Defendant miscomprehends Plaintiff's GBL 349 claim.

Defendant's GBL 349 liability is based on its conduct towards Plaintiff and pattern and practice towards consumers generally in blindly issuing executions without taking *any* steps – much less conducting a meaningful attorney review – to determine whether the judgment they

---

[1] Just prior to the filing of this document, Defendant filed DE 53, a response in opposition to Plaintiff's motion for partial summary judgment in which it concedes a violation of the FDCPA. Therefore, this case will go to trial solely on damages as to that violation. Reasonable attorney's fees and costs are mandatory for even a single FDCPA violation.

are executing on has been vacated. Further, Defendant admits it knows that some of the judgments it is executing upon are vacated but have made the business decision to take *no steps* to determine if the judgments have been vacated. This pattern and practice makes Defendant's conduct "consumer oriented."

Executing on vacated judgments are "act[s] or practice[s]" that are materially "deceptive or misleading" because it represents to consumers such as Plaintiff that 1) there is a valid judgment when there is not, 2) Defendant has a right to execute on their wages when it does not, 3) that an attorney has performed a meaningful attorney review to determine that there exists a valid judgment when there is not, and 4) the consumers owe costs of court and post-judgment interest when, given the absence of a judgment, there is no adjudication that those amounts are owed. Plaintiff's GBL 349 damages are extensively documented.

Defendant's arguments regarding Plaintiff's claim for punitive damages is similarly unavailing. As itemized in the statement of undisputed facts below, each year F&G is assigned roughly 5,000 putative judgment accounts where the judgment was allegedly obtained by firms unrelated to F&G. The undisputed evidence, identified in the next section, shows that Defendant actually knows that some of the thousands of judgments it executes upon each year have been vacated. However, Defendant made a willful and deliberate business decision to save time and expense by taking no steps whatsoever—either when it is assigned the judgments for execution, when it signs the execution, or at any other point—to determine whether the putative judgments it is executing upon have in fact been vacated. Defendant knows it can check e-courts, the free, publicly available court website,[2] to determine whether a putative judgment has been vacated. Defendant consciously made a business decision not to check ecourts because it believes it

---

[2] https://iapps.courts.state.ny.us/webcivilLocal/LCMain

would be "unreasonable" to do so, given the large volume of judgment accounts it routinely executes on. Based on this record, a jury could easily conclude that Defendant willfully and consciously disregarded Plaintiff's right to his property, justifying a punitive damage award.

Unable to defendant the merits of Plaintiff's claim, Defendant raises a red-herring of a dispute letter sent in 2012 – three years before the robo-income execution – regarding a dispute about whether Mr. Callender has opened the Discover Card account that was the basis for the underlying debt. Discover Bank confirmed that a credit card was opened under Mr. Callender's name but instructed F&G to check documents from the court file, the check the answer filed in court, and to check for a copy of the judgment.  F&G did none of those things, and did not even check the Ecourt's website.  If F&G had done any of the steps it was directed to by Discover Bank it would have discovered that the judgment that – three years later – it executed upon had been vacated.  While the dispute letter issue is a side diversion – one that works against F&G – the issue is whether Defendant performed a "meaningful attorney review" to determine that it had a legal right to garnish Plaintiff's wages. The undisputed summary judgment evidence is that there was no review of any sort in issuing the wage execution: it was just one more execution in a stack of others the attorney was signing that day without performing any review.

## IV.    STATEMENT OF UNDISPUTED FACTS

The following facts correspond to Plaintiff's Local Rule 56.1 Statement of Material Facts in support of Plaintiff's Motion for Partial Summary Judgment ("Pl. 56.1"). [DE 53]. Additional facts correspond to Plaintiff's Local Rule 56.1 Counter Statement of Material Facts in opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Ctr. 56.1"), based on exhibits attached to the corresponding January 6, 2017 Declaration of Ahmad Keshavarz ("Keshavarz Decl"). Both documents are filed in support of Plaintiff's motion for partial summary judgment. For the sake of simplicity, the Counterstatement incorporates Plaintiff's Rule 56.1 Statement, DE

52. facts correspond to Plaintiff's Local Rule 56.1 Counter Statement of Material Facts in Opposition to Defendant's Motion for Partial for Summary Judgment ("Pl. Ctr. 56.1"), based on exhibits attached to the corresponding January 6, 2017 Declaration of Ahmad Keshavarz ("Keshavarz Decl"). Both documents are filed in support of Plaintiff's motion for partial summary judgment. For the sake of simplicity, the Counterstatement incorporates Plaintiff's Rule 56.1 Statement, DE 52.

F&G is a debt collection law firm. Pl. 56.1 ¶ 1 (hereafter "¶"). Each year, F&G is referred 3,500 judgment accounts, collects on thousands of judgments, and issues thousands of information Subpoenas and Restraining Notices. ¶ 2, 6, 7.

On July 27, 2005, Discover Bank initiated a lawsuit against Mr. Callender in New York County Civil Court. ¶ 8.  Discover Bank alleged that Mr. Callender had entered into a credit card agreement with it and subsequently defaulted on his monthly payments, incurring a debt of $5,896.87. ¶ 9. Discover Bank obtained a default judgment against Mr. Callender on December 21, 2005 when Mr. Callender failed to answer the complaint. ¶ 10. Mr. Callender was not served and had no knowledge of the lawsuit's existence until on or about May 2012 when he obtained a copy of his credit report. ¶ 11.  The affidavit of service in the collection lawsuit alleges service upon Mr. Callender's 17 year old son, "Jason." ¶ 12. Mr. Callender had no children at the time service was alleged, let alone a 17 year old son named "Jason." ¶ 13. On May 22, 2012, Mr. Callender filed a pro se order to show cause in New York County Civil Court to vacate the judgment for lack of jurisdiction. ¶ 14. As directed by the Court, Mr. Callender served the order to show cause on Discover's counsel of record in the case, Mann Bracken LLP, at their address in Rochester, NY. ¶ 15. No one appeared on behalf of Discover Bank at the return date of the order to show cause on June 20, 2012.  ¶ 16. The Court accordingly vacated the judgment and

accepted Mr. Callender's answer as filed. ¶ 17. The Court then restored the matter to the calendar for August 20, 2012. ¶ 18. In its written order, the Court stated that it would be responsible for notifying the Discover Bank's counsel of the next court date. ¶ 19. When no one appeared on behalf of Discover Bank at the August 20, 2012 court date, the Court dismissed the case. ¶ 20.

During roughly this same time, Mr. Callender began to receive a series of letters from F&G seeking to collect an alleged debt owing to Discover Bank. ¶ 21. Mr. Callender assumed that this was a different alleged debt than the one involved in the case pending in the New York County Civil Court because the letters came from a different law firm, did not refer to a judgment, and the amount of the debt was different. ¶ 22.   Mr. Callender thought he had been the victim of identity theft. ¶ 23. When letters continued to come from F&G, Mr. Callender filed a complaint with the New York City Department of Consumer Affairs ("DCA") stating that he had been a victim of identity theft and that F&G was attempting to collect a debt that was not his. ¶ 24.  In January 2013, Mr. Callender received a response from the DCA with an enclosed letter from F&G. ¶ 25. The letter acknowledged that F&G had received the complaint letter and stated that it had been "advised by Discover Bank to cease all collection activity and that the account would be investigated by their fraud department." ¶ 26. After F&G forwarded the complaint to Discover Bank, Discover Bank advised F&G to send it "copies of any answer filed, all internal notes, judgment (if applicable) and all other documents pertaining to this account." ¶ 27. However, F&G did search for nor did it forward not forward the requested documents to Discover Bank. It did not check the court file. ¶ 79. F&G did not event check ecourts.  Pl. Ctr. 56.1 ¶ 2. Mr. Callender never received the results of the purported investigation, nor did he receive any further communications from F&G regarding his complaint or the status of his account.  Pl.  56.1 ¶  29. He assumed the matter was resolved. ¶ 29.

On or around January 2, 2015, Discover Bank, through its debt collection law firm F&G, filed an income execution with New York City Marshal Ronald Moses seeking enforcement of the vacated judgment against Mr. Callender—the same judgment that Discover Bank had obtained in 2005 and that the Court had vacated in 2012. ¶ 30. On or around January 5, 2015, the New York City Marshal, on behalf of Discover and F&G, served the income execution on Dollar Tree Stores, Inc., Mr. Callender's employer. ¶ 31. Thereupon, Mr. Callender's employer began to garnish his wages. ¶ 32.

Ronald Ferraro was the lawyer who signed the income execution in this case. ¶ 33. F&G's computer system automatically generates income executions for its attorneys to sign. ¶ 34. Mr. Ferraro trusted that the information contained in the computer system was accurate, and therefore did not take steps to independently verify that the income executions he signed were for valid judgments. ¶ 35. Mr. Ferraro's involvement with the garnishment was limited to merely signing the income execution, then passing it on to an employee who mailed it to Mr. Callender's employer. ¶ 36. Mr. Ferraro took no steps to independently verify that the information contained in the income execution was accurate. ¶ 37. It takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. ¶ 38. However, F&G believe that it would be unreasonably burdensome to take two minutes to check the ecourts website prior to issuing an income execution to ensure that the putative judgment is valid. Pl. Ctr. 56.1¶ 3. Yet, Defendant takes numerous steps—such as confirming place of employment and location of assets—to ensure that the wage garnishments it issues will result in the payment of funds. Pl. Ctr. 56.1¶ 4.

In the retainer agreement between F&G and Discover Bank that governs F&G's handling of Mr. Callender's account, F&G expressly warrants that it "shall exercise reasonable care and

best efforts in attempting to collect Accounts and shall not engage in any collection or judicial enforcement action which may be deemed unfair, abusive, deceptive or harassing." Pl. 56.1 ¶ 45. The retainer agreements further provides that Discover Bank "is relying upon the expertise of [F&G] in regard to the matters assigned to it and [Discover Bank] expects [F&G] to proactively utilize its expertise with regard to matters in this paragraph, whether specifically directed by [Discover Bank] or not." ¶ 46. Still, F&G maintains that it is under no obligation—contractual or otherwise¬—to independently verify that the judgments it executes on have not been vacated. ¶ 47.

Mr. Callender realized he was being garnished when he received his paycheck on or about January 23, 2015. ¶ 49. After considerable delay and aggravation, Mr. Callender was able to obtain legal representation. ¶ 50.   With the assistance of counsel, he ascertained that the debt for which his wages were being garnished was the same Discover Bank claim that formed the basis of the 2005 lawsuit and the judgment he had successfully vacated in 2012. ¶ 51. On April 15, 2015, Mr. Callender's counsel wrote F&G, demanding that it cease garnishing his wages and restore to him all monies collected. ¶ 52. After repeated phone calls and messages, F&G complied with this demand on April 23, 2015. ¶ 53.

F&G admits that it was unfair to Mr. Callender to garnish his wages based on a vacated judgment.  ¶ 48. F&G have repeatedly been sued for collecting on vacated judgments. ¶ 71.

F&G was a Defendant in a special proceeding brought by the Chief Administrative Judge for the New York State Unified Court System alleging that F&G, along with 36 other law firms, utilized process servers that systematically engaged in sewer service. ¶ 72. F&G entered into a consent agreement in the Pfau case whereby it agreed to implement a series of policies and procedures designed to prevent sewer service. ¶ 73. F&G was also aware of a recent class action

8

in the United States District Court for the Southern District of New York whereby debt collection law firm Mel S. Harris and Associates, LLC was sued for obtaining over one hundred thousand default judgments using sewer service affidavits. ¶ 74.

Thus, in 2015 when F&G executed on Mr. Callender's bank account based on the 2005 default judgment, it was aware that New York had a serious problem with sewer service. ¶ 75. F&G knew that default judgments that were obtained prior to *Pfau*—such as the collection suit against Mr. Callender—were especially likely to be based on sewer service. ¶ 76. However, F&G nonetheless maintains that it would be unreasonable for it to check e-courts to see if default judgments it is attempting to execute on have been vacated due to improper service. ¶ 77.

## V.   ARGUMENT

### A.   Defendant is not entitled to summary judgment as to Plaintiff's GBL 349 claim.

Defendant is not entitled to summary judgment on Plaintiff's claim under N.Y. Gen. Bus. Law § 349 (hereafter "GBL 349").   If anything, Plaintiff is entitled to summary judgment as to liability on this claim.

#### 1.   While violation of GBL 601 does not "necessarily" violate GBL 349, neither does it preclude a 349 claim where, as here, Plaintiff independently meets each of the three GBL 349 elements.

Plaintiff brings a claim under GBL 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce" and provides "any person who has been injured by reason of any violation of this section may bring an action in his own name." GBL 349. Citing to *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 158 (S.D.N.Y. 2015) and the cases referenced therein, Defendant argues that N.Y. Gen. Bus. Law § 601 ("GBL 601") necessarily precludes any claim under GBL 349 when the alleged conduct constitutes a violation

of GBL 601.[3] This proposition and the reasoning in *Gomez* has been squarely rejected by subsequent decisions.

In *Gomez*, Plaintiff brought suit alleging, *inter alia*, a debt collection law firm violated GBL 349 by "robo-signing post-judgment executions [that] impliedly represented to consumers that an attorney had done a meaningful review prior to issuing the execution when none was done." *Gomez* at 158.  While suggesting this conduct may otherwise meet the standards for liability pursuant to GBL 349, *Gomez* nonetheless held that Plaintiff's GBL 349 claim was precluded by GBL 601, which governs debt collection misconduct.

The *Gomez* decision relied on a misapplication of the Second Circuit decision in *Conboy v. AT & T Corp*, 241 F.3d 242 (2d Cir.2001). Relying on *Gomez*, Defendant argues that *Conboy* made a blanket holding that any conduct that violates GBL § 601 *et al* (the New York Debt Collection Procedures Act) cannot state a GBL § 349 claim. *Gomez* at 158 *citing to Conboy*, 241 F.3d at 258.  This is an overly broad reading of *Conboy*, in conflict with other Second Circuit decisions, and squarely rejected by subsequent District Court decisions.

*Conboy* adopted the unremarkable language of the district court that a violation of GBL § 601(6) does not "***necessarily*** constitute[ ] a deceptive act under Section 349."  That is true.  GBL § 601 prohibits, *inter alia*, conduct by a debt collector that may be abusive, but that is not deceptive.  For example, in *Conboy* the consumer alleged that the collector made abusive telephone calls in violation 601(6) and therefore stated a 349 claim.

*Conboy* merely held that in order to state a GBL 349 claim, the consumer must meet the elements of GBL 349 *itself*, as opposed to arguing that a violation of 601 "necessarily" violates 349.  If *Conboy* stood for the blanket prohibition argued by Defendant and suggested by *Gomez*,

---

[3] GBL 601 is New York State's corollary to the FDCPA, prohibiting a range of unfair and deceptive debt collection practices.

then there would be no need for *Conboy* to continue to discuss why the claim of abusive telephone calls are not "materially deceptive" under 349:

> Plaintiffs also have failed to indicate how UCS's conduct was "deceptive" in any material way… [T]hey also have not identified any statement made during any of UCS's telephone calls that was false or deceptive. As the District Court noted, "there is no indication that the telephone calls were for any purpose other than for what they purported to be." Because a Section 349 violation requires a defendant to mislead the plaintiff in some material way, and plaintiffs have not alleged any type of deception here, the District Court correctly dismissed their claim under New York's General Business Law.

*Conboy* at 252 (citations omitted).

So too for the decision cited as authority by *Conboy: Varela v. Inv'rs Ins. Holding Corp.*, 81 N.Y.2d 958, 960, 615 N.E.2d 218, 219 (1993).  In *Varela,* the consumer brought claims under GBL 349 and GBL 601 against an insurance company for refusing to enter a satisfaction for a wrongfully entered judgment unless the consumer paid the $60 fee for issuing and satisfying the judgment. *Id.* The court held that, regardless of whether the insurance company's actions were "proper," the conduct was not materially deceptive as required for GBL 349, and thus did not state a 349 claim. The court went on to hold that 601 did not allow for a private right of action and dismissed the suit.

The proposition that *Varela* precludes recovery pursuant to GBL 349 for conduct that also violates GBL 601 was expressly rejected in *Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. 2013)("Nothing in the *Varela* decision suggests that a party's litigation activities are per se immune from the reach of GBL § 349 . . . Under the logic of these rulings, the plain language of GBL § 349, read together with its legislative history, provides no room for a "blanket exemption" for deceptive practices in the context of civil litigation . . . this Court . . . holds, without qualification, that "deceptive" litigation practices by a debt buyer may form the basis for a GBL § 349 claim or counterclaim.")

The interpretation advocated by Defendant paints with too broad a brush. Thus, two recent decisions from the Southern and Eastern Districts of New York have rejected the reasoning in Gomez.   In *Samms*, the defendant debt collection law firm regularly filed collection lawsuits demanding attorney's fees when it had no contractual or legal rights to fees. *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP*, 2015 WL 6437493 (S.D.N.Y. October 21, 2015)(hereinafter "*Samms II*"). The court granted Samms' motion to amend to add a GBL 349 claim, holding that Samms had stated a claim based on the allegation that Abrams had regularly filed such suits. *Id.* At summary judgment, Abrams recited the argument made in *Gomez*: that *Conboy* precludes a GBL 349 claim based on conduct that would also violate GBL 601. *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP*, 163 F.Supp.3d 109 (S.D.N.Y. 2016)(hereinafter "*Samms III*").  While not referring specifically to *Gomez*, *Samms III* flatly rejected the broad interpretation of *Conboy* upon which *Gomez* was based:

> *Conboy* simply stands for the proposition that a § 601 claim is not necessarily a § 349 violation: it did not address conduct that supports claims under both § 601 and § 349. In particular, it does not disallow a § 349 claim because the underlying conduct also constitutes a violation of § 601. There is no basis for Abrams's argument that § 601 bars overlapping § 349 claims.

*Samms III* at * 5.

The *Samms III* holding (rejecting the *Gomez* reasoning) was subsequently adopted by another court. The *Gomez* reasoning "misinterprets *Conboy*, as *Conboy* merely disallowed a claim under Section 349 that was *solely* a violation of Section 601." *Martinez v. LVNV Funding, LLC, et al.*, 2016 WL 5719718 at * 3 (E.D.N.Y. Sept. 30, 2016) (emphasis in original). *Martinez* further expands on the *Samms III* holding, citing to Second Circuit and district court authority that a consumer states a valid GBL 349 claim so long as each of the three GBL 349 elements are

met, regardless if the same conduct would also violate a different statute for which a private right

of action is not allowed:

> The proposition that a party cannot raise an independent GBL § 349 claim where an overlapping claim exists under a statute that does not provide a private right of action was raised and rejected in *M.V.B. Collision, Inc. v. Allstate Ins. Co.* 728 F. Supp. 2d 205, 219 (E.D.N.Y. 2010). In *M.V.B. Collision*, the court found that neither *Conboy* nor *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) "held that a § 349 claim is barred simply because some overlap exists between the deceptive practices at issue and a state statute for which there is no private right of action." *Id.* at 219. Similarly, in *Sigall v. Zipcar, Inc.*, the court held that with respect to a claim brought under GBL § 396–z, which also does not provide a private cause of action, "Plaintiffs still may bring a claim under § 349 for deceptive acts or practices, provided it is a 'free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under' § 396–z ... and not merely an 'alleg[ation] that a violation of [§ 396–z] necessarily constitutes a deceptive act under Section 349.' " 2014 WL 700331, at *4 (S.D.N.Y. Feb. 24, 2014) (*citing Broder*, 418 F.3d at 200), *aff'd*, 582 Fed.Appx. 18 (2d Cir. 2014). *Gomez* overlooked the distinction addressed in *Samms*, *M.V.B. Collision*, and *Sigall*, that a plaintiff may properly plead a claim under GBL § 349 that might also overlap with a claim under GBL § 601 if the plaintiff can set forth a free-standing claim under Section 349.

*Id.*

Surprisingly, Defendant cites *Broder* and *Sigall* in support of its position. However,

Defendant misses the point made in *Martinez* in citing to those very same cases. Plaintiff is *not*

arguing that a violation of a statute for which there is no private right of action "necessarily

constitutes" a violation of GBL 349. Rather Plaintiff is arguing for the proposition—supported

by the *Broder* and *Sigall* decisions—that Plaintiff may bring a "free standing" GBL 349 claim so

long as Plaintiff meets each of the three GBL 349 elements. The fact that Defendant's

misconduct may also violate a statute for which there is no private right does not—as Gomez

holds—necessarily *preclude* a GBL 349 claim. Instead, the relevant inquiry is whether Plaintiff

has met the requirements of GBL 349.

*Campbell v. MBI Associates, Inc.* is another example of a case demonstrating how GBL

601 and GBL 349 can exist in harmony and, if anything, 601 can help inform what is deceptive

under 349.*Id.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015). *Campbell* held a consumer receiving a collection letter demanding a $5.00 processing fee if payment was made by credit card states a GBL claims as to the elements of being consumer oriented and materially deceptive, with the jury to determine whether the misrepresentation caused injury. *Campbell* expressly considered the CPLR 601(2) prohibition on collecting fees not "legally chargeable" to the consumer in helping to interpret whether an analogous provision under the FDCPA, 15 U.S.C. § 1692f(1) and 1692e(2)(B), and thus materially deceptive under GBL 349. The court held the consumer stated a claim under both the FDCPA and GBL 349. The court had no concern of 601 creating some blanket exemption to GBL 349 liability. Instead, the court went through an analysis of whether the consumer met each of the three GBL 349 elements.

### 2.    Plaintiff meets each of the three of the GBL 349 elements for liability.

In order to state a claim under Section 349, a plaintiff must plausibly allege three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was [deceptive or] misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (Ct.App.2000) (internal citations omitted). In a conclusory manner, Defendant contends Plaintiff has not met any of these three elements.

### a)    Defendant's misconduct was "consumer oriented."

In order to demonstrate misconduct is consumer oriented, the consumer must demonstrate "that the acts or practices have a broader impact on consumers at large," but the statute does "not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995). "Plaintiff, thus,

need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Id*.

The test is whether the actions complained of "potentially affect similarly situated consumers." *Id.* at 26–27, 623 N.Y.S.2d 529, 647 N.E.2d 741. Plaintiffs in *Oswego* were union pension funds that opened accounts with the defendant bank. Plaintiffs complained that the bank failed to pay appropriate interest on the balances in their accounts. The Court of Appeals held that plaintiffs satisfied the "consumer-oriented" element of Section 349, reasoning that "defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the [plaintiff] Funds with standard documents presented to customers upon the opening of accounts." 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. As in *Oswego*, Defendant's dealt with Mr. Callender's account in the same manner it deals with the thousands of other judgments it attempts to execute upon.

Defendant contends that Plaintiff has not even raised a fact question as to this element. Plaintiff contends that not only is Defendant not entitled to summary judgment on this element, he has in fact established this element as a matter of law. Plaintiff alleges, and the undisputed evidence demonstrates, that Defendant sends out thousands of wage executions and bank restraints each year for putative judgments obtained years earlier by different law firms. [Rule 56.1 Statement ¶ 2, 6, 7]  Plaintiff knows that sewer service is widespread in New York and that a certain number of judgments it collects on with inevitably be vacated after being placed with Defendant. [Rule 56.1 Statement ¶ 72-76]. This conduct directly affected the consuming public at large because it assured that any consumer whose judgment account was placed with

Defendant and who thereafter vacated that judgment might nonetheless be targeted by Defendant for enforcement of the vacated judgment.

The Defendant's "deceptive or misleading" conduct is blindly issuing wage garnishments (and bank restraints) without taking any steps—much less conducting a meaningful attorney review—to determine whether the judgment they are executing on has been vacated.  F&G is a debt collection law firm. Pl. 56.1 ¶ 1 (hereafter "¶"). Each year, F&G is referred 3,500 judgment accounts, collects on thousands of judgments, and issues thousands of information Subpoenas and Restraining Notices. ¶ 2, 6, 7.

Ronald Ferraro was the lawyer who signed the income execution in this case. ¶ 33. F&G's computer system automatically generates income executions for its attorneys to sign. ¶ 34.  Mr. Ferraro trusted that the information contained in the computer system was accurate, and therefore did not take steps to independently verify that the income executions he signed were for valid judgments. ¶ 35. Mr. Ferraro's involvement with the garnishment was limited to merely signing the income execution, then passing it on to an employee who mailed it to Mr. Callender's employer. ¶ 36. Mr. Ferraro took no steps to independently verify that the information contained in the income execution was accurate. ¶ 37. It takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. ¶ 38. However, F&G believe that it would be unreasonably burdensome to take two minutes to check the ecourts website prior to issuing an income execution to ensure that the putative judgment is valid.  Pl. Ctr. 56.1¶ 3.  Yet, Defendant takes numerous steps—such as confirming place of employment and location of assets—to ensure that the wage garnishments it issues will result in the payment of funds. Pl. Ctr. 56.1¶ 4. F&G admits that it was unfair to Mr. Callender to garnish his wages based on a vacated judgment.  Pl. 56.1 ¶ 48. F&G have repeatedly been sued for collecting on vacated judgments. ¶

16

71.

In *Midland Funding, LLC v. Giraldo*, a consumer defendant adequately stated a GBL 349 counterclaim against a debt collector plaintiff who allegedly filed a collections lawsuit without any evidence that the defendant owed the debt. 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. 2013). The *Giraldo* court found the conduct consumer-oriented because:

> [T]he conduct complained of," at its heart, involves the "routine filing" of assigned debt lawsuits by plaintiff "despite a lack of crucial, legally admissible information" or "sufficient inquiry" into whether the claims are meritorious. When considered together with defendant's allegation that plaintiff's deceptive acts and practices "affect the consuming public at large" and are "not limited to the defendant," the challenged conduct and practices clearly raise issues beyond any "private contract disputes." Such allegations therefore fall within the broad scope of GBL § 349.

*Id*. at 752.

The *Giraldo* decision is instructive. F&G's blind signing of stacks of executions is similar to Midland's "routine filing" of collection lawsuits without sufficient inquiry into whether the claims are meritorious.  Both is routine conduct that is consumer oriented.[4]

 In Giraldo the "routine filing" of collection lawsuits without "As here, the claim there arose from misrepresentations in an individual collections lawsuit. Likewise, the *Giraldo* plaintiff alleged that the "deceptive acts and practices affect the consuming public at large and are not limited to the defendant". *Midland Funding, LLC v. Giraldo*, at 752 (internal qoutations omitted). Like the defendant in *Giraldo*,

**b)**    **Defendant's misconduct was "deceptive or misleading."**

---

[4] Further, F&G's conduct is even more "deceptive and misleading" than the misconduct of Midland because F&G actually knows that some of the judgments they are executing on have been vacated.  F&G has just made the conscious business decision that avoiding the "cost" of checking Ecourts before issuing executions on years old judgments is more important than avoiding the wrongful seizure and conversion of the wages of consumers. Consumer protection statutes such as GBL 349 and the FDCPA are designed *precisely* to change this calculation and to prevent law abiding businesses from being competitively disadvantaged.

Defendant cites no authority in support of its contention that Defendant's conduct was not "deceptive or misleading" within the meaning of GBL 349. Rather, Defendant argues that 1) it did not actually know the judgment had been vacated and 2) that Defendant's misconduct, if any, was Plaintiff's fault. If anything, Plaintiff believes Defendant's misconduct was "deceptive or misleading" as a matter of law. At a minimum at least, there is a question of material fact that precludes Defendant from obtaining summary judgment of the GBL 349 claim based on this element. Specifically, Plaintiff has at a minimum established a fact question as to whether Defendant "is engaging in an act or practice that is deceptive or misleading in a material way." *Oswego Laborers',* 85 N.Y.2d at 25, 647 N.E.2d at 744 (1995). "[I]t is not necessary under [GBL 349 to] establish the defendant's intent to defraud or mislead." *Id.*, 85 N.Y.2d at 26, 647 N.E.2d at 745.

In the case at bar, Plaintiff alleges the Defendant's "deceptive or misleading" conduct is blindly issuing wage garnishments (and bank restraints) without taking any steps—much less conducting a meaningful attorney review—to determine whether the judgments it executes on have been vacated. Executing on vacated judgments are "act[s] or practice[s]" that are materially "deceptive or misleading" because it represents to consumers such as Plaintiff that 1) there is a valid judgment when there is not, 2) Defendant has a right to execute on their wages when it does not, 3) that an attorney has performed a meaningful attorney review to determine that there exists a valid judgment when there is not, and 4) the consumers owe costs of court and post-judgment interest when, given the absence of a judgment, there is no adjudication that those

amounts are owed.[5]

This blind signing of judicial papers, be it post-judgment wage executions and bank restraints, collection lawsuits, or affidavits in support of default judgments is colloquially known (and occasionally referred to in judicial decisions) as "robo-signing," and has been held as to state a GBL 349 claim, as well as an FDCPA claim.

In *Samms III*, the District Court denied summary judgment for Defendant on Plaintiff's GBL 349 claim for Defendant's practice of seeking attorneys' fees in its consumer collection cases. The court found that this practice could be construed as a deceptive communication because it communicated to the consumer that Defendant had a legal or contractual right to collect attorneys' fees when, in fact, it had no such right. *Id.* The misconduct must be "deceptive or misleading" to a "reasonable consumer" in order to be material. *Samms* at 117 *citing to Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009). *See also Campbell v. MBI Associates, Inc.*, 98 F.Supp.3d 568 (E.D.N.Y. 2015)(Defendant debt collector's practice of sending dunning letters stating that credit card payments would be subject to a five dollar processing fee was "deceptive" under GBL 349 because it would mislead the reasonable consumer into thinking that Defendant had a legal right to a processing fee.); *Diaz v. Portfolia Recover Associates, LLC*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012)(Intentionally filing time-barred lawsuit with the intent to deceive the court or a party is a deceptive act under GBL § 349 and N.Y. Judiciary Law § 487).

Indeed, in *Gomez* itself, one of the GBL 349 claims was the "robo-signing post-judgment executions [that] impliedly represented to consumers that an attorney had done a meaningful

---

[5] *See* F*ritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 177 (E.D.N.Y. 2013) (Plaintiffs state a claim under the FDCPA and GBL 349 for Defendants, *inter alia*, representing to the credit reporting agencies an amount due that rolled in costs of court when, given the absence of a judgment, there was no adjudication that court costs were owed).

review prior to issuing the execution when none was done." *Gomez* at 158.  The *Gomez* decision suggested this robo-signing would state a GBL 349 claim but for the 601 preclusion of a 349 claim. *Gomez* at 158. "A claim [under GBL 349] based on the enforcement of the judgment against her, or on the "robo-signing" of the execution paperwork would not be time-barred, but fails for a different procedural reason," that is, the 601 preclusion of the 349 claim.

Since *Conboy*, many Courts have held that deceptive debt collection practices state a GBL § 349 claim, finding that the issue is whether the consumer meets the elements of 349 itself, not whether the deceptive conduct would also violate the state debt collection act. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015)("Defendants argue that the alleged fraudulent activities were not "consumer-oriented" in that they were directed at the court and at Plaintiffs' employers, rather than at the consumers themselves."); *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015)("Defendants have routinely filed allegedly fraudulent lawsuits in New York courts and obtained default judgments against various consumers"). *See also Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) (Allegation of robo-signing thousands of affidavits of merit falsely claiming personal knowledge of key facts necessary for the entry of default judgments states a claim for violations of GBL 349 (as well as the FDCPA); and *Diaz v. Portfolio Recovery Services Assoc. LLC., 10 CV 3920* MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012)(debt buyers' and debt collection attorneys' regularly filing time barred lawsuits without meaningful attorney review is consumer oriented conduct in violation of the GBL). Notwithstanding the *Gomez* decision, Defendant's argument that GBL § 601 bars or preempts a GBL 349 claim is belied by the entire foregoing body of case law, finding deceptive debt collection practices to support GBL 349 claims.

The misconduct must be "deceptive or misleading" to a "reasonable consumer" in order to be material. *Samms* at 117 *citing to Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009). Obviously, the above referenced misconduct would be "deceptive or misleading" to any consumer, least sophisticated, reasonable, or otherwise.

### c)   Defendant's misconduct inflicted injury on Plaintiff.

Defendant argues that Plaintiff is required to prove injury to Plaintiff and to the public generally in order to sustain a GBL 349 violation. This argument conflates the requirement that deceptive acts be "consumer oriented" with the requirement that the acts cause injury to the Plaintiff. *See Samms III* (evidence that Plaintiff had suffered individualized harm as a result of Defendant's misrepresentations was sufficient to survive Defendant's motion to dismiss a GBL 349 claim). Defendant cites to no authority that the harm must be sustained by the public generally. But Defendant's misconduct certainly inflicted injury on Mr. Callender.[6]

### B.   DEFENDANT'S CONDUCT GIVES RISE TO A CLAIM FOR PUNITIVE

---

[6] Defendant's conduct caused Mr. Callender to experience emotional and mental pain and anguish, embarrassment and humiliation. ¶ 54, 60. Defendants' unlawful conduct occurred at an especially vulnerable time for Mr. Callender and his family in that he had just lost a well-paying job that had enabled him to support his wife and three children in reasonable comfort and security for seven years. ¶ 55. He had been unemployed for over 4 months. ¶ 56. The job he managed to obtain (and whose first paycheck F&G garnished) paid little more than half of his previous employment. ¶ 57.  His wife was obliged to work outside the home for the first time in their married life. ¶ 58. Mr. Callender was obliged to place his children in day care or extended-day after-school programs, at additional and considerable expense to the family. ¶ 59. The stress brought on by the wrongful garnishment caused hives to break out on Mr. Callender's face during the period of time that his wages were being garnished. ¶ 61. Mr. Callender could not eat, his stomach turning and twisting into knots. ¶ 62. He felt withdrawn and bottled up his feelings, even as he suffered from the stress. ¶ 63. He was afraid about how he could ever pay a ten thousand dollar judgment, and how this would affect his ability to provide for his wife and three young children. ¶ 64. He could not sleep, tossing and turning, and staying up until 3:00 AM worrying about what he was going to do. When he did doze off, his sleep was not restful. He would only be able to sleep for an hour or two at a time. ¶ 65. He was unable to pay his full rent, on time, for the month of April 2015. ¶ 66. Not only did Defendants collect on a vacated judgment, they collected on a vacated judgement that itself was procured by the fraud of sewer service. ¶ 67. This made Defendants' wrongful execution even more outrageous and offensive to Mr. Callender. ¶ 68. And of course, Defendants' conduct caused Mr. Callender actual damages of being deprived of his wages for months. ¶ 69. He also lost time and incurred expenses fighting to understand what caused the money to be taken out of his wages. ¶ 70.  He also lost time seeking and obtaining legal representation. ¶ 71

## **DAMAGES**

Defendant does not dispute that punitive damages are available for conversion and for violations of GBL 349. Rather, Defendant merely argues that the summary judgment record does not support a punitive damage award. In reaching this conclusion, Defendant applies an erroneous standard for punitive damages, misinterprets the applicable law, and ignores critical evidence of Defendant's willful and reckless misconduct.

New York law provides for punitive damages for conversion where the conversion was accomplished with malice or insult, or with reckless or willful disregard for plaintiff's rights. 23 N.Y.Jur.2d *Conversion*, § 74 (1982); *Fraser v. Doubleday & Co., Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). Indeed, New York courts have long recognized that a tort defendant's reckless conduct can form the basis for an imposition of punitive damages. *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F. Supp. 579, 586 (S.D.N.Y. 1989) ("Under New York law, punitive damages may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right.")(internal quotations omitted).

Additionally, "punitive damages may be awarded for a violation of GBL § 349." *Barkley v. Olympia Mortg. Co.*, 557 Fed.Appx. 22, note 1 (2d Cir. 2014)(*citing Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Div, 2010)). A plaintiff may recover punitive damages where the defendant's violation of GBL § 349 is "so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." *Wilner* 893 N.Y.S.2d at 218. There, the New York Court Appellate Division, Second Department held that  a defendant's failure to reach a timely decision on an insurance claim, in violation of GBL § 349, could support the imposition of punitive damages because a jury could determine that the

defendant's conduct was "so flagrant as to transcend mere carelessness." *Id.*

Defendant argues that punitive damages are unavailable unless Defendant's conduct evinces a "high degree of moral turpitude" or the "type of wanton dishonestly typically associated with crime." Moreover, Defendant argues that punitive damages are unavailable because Plaintiff cannot demonstrate that Defendant's conduct was directed toward the public generally. This formulation misstates the relevant law and confuses the standard for punitive damages for conversion and GBL § 349 claims with the heightened standard applicable to contract claims and certain fraud claims.[7] *See Rocanova v. Equitable Life Assur. Soc. Of U.S.*, 83 N.Y.2d 603, 613 (1994). These additional requirements—"known, respectively, as the "public wrong" and "extraordinary egregiousness" requirements"—are not applicable for typical punitive damages claims. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 262 (S.D.N.Y. 2005).

The imposition of this higher standard for punitive damages in contract and related fraud cases is justified by the principle that contract law seeks merely to restore the parties to the positions they would have occupied if the breaching party had performed under the contract. *Id.* This factor is simply not present in conversion and GBL § 349 cases. Moreover, a higher standard for punitive damages in contract cases is appropriate because the imposition of punitive damages could discourage breaches of contract that the law endeavors to protect. *Id.* at note 12. This justification is inapplicable to this case because the law does not seek to encourage acts of conversion or violations of GBL § 349.

Defendant erroneously relies on *W.S.A., Inc. v. ACA Corp.* for the proposition that the

---

[7]Plaintiff notes that GBL § 349 requires Plaintiff to prove that Defendant's conduct was "consumer oriented." Thus, a finding of liability as to Plaintiff's GBL § 349 claim would necessarily satisfy the requirement that the offending conduct be aimed at the public generally.

heightened standard for punitive damages in contract and some fraud cases has been extended to apply to all tort claims. *W.S.A., Inc. v. ACA Corp.*, 1998 WL 635536, at *2 (S.D.N.Y. Sept. 15, 1998)(Haight, J). Southern District case law does not support such a finding. While the *W.S.A., Inc.* opinion does contain language indicating that the heightened standard is applicable in tort cases generally, that opinion is best understood in the context of a split of authority over which standard to apply in cases alleging fraud-in-the-inducement. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 263-65, note 21 (S.D.N.Y. 2005)(Haight, J)(describing the lack of consensus as to the availability of punitive damages in fraud-in-the-inducement cases and dismissing portions of the *W.S.A., Inc.* opinion as *dicta*).

Defendant's argument that the higher punitive damage standard is applicable where the defendant is an attorney is similarly inapposite. The cases relied upon by Defendant for this proposition involve legal malpractice claims based on breach of attorney retainer agreements. *Williams v. Cappola*, 804 N.Y.S.2d 172 (4th Dep't 2005); *Rosenkrantz v. Steinberg*, 786 N.Y.S.2d 35, 36 (1st Dep't 2004). The cases were therefore treated as contract cases for purposes of determining the standard for punitive damages.

Established case law in New York and the Southern District holds that a defendant's reckless conduct can support the imposition of punitive damages for conversion. 23 N.Y.Jur.2d *Conversion*, § 74 (1982); *Fraser v. Doubleday & Co., Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). Violations of GBL § 349 can also warrant an award of punitive damages where Defendant's conduct evinces a reckless or willful disregard for Plaintiff's rights. *Wilner v. Allstate Inc. Co.*, 893 N.Y.S.2d 208, 218 (2d Div, 2010). Accordingly, a plaintiff seeking punitive damages under this standard can survive a motion for summary judgment if a reasonable jury could conclude, based on the record, that the defendant acted with a reckless disregard for

the plaintiff's rights. Plaintiff meets that standard.

Defendant argues—in conclusory terms—that Plaintiff is not entitled to punitive damages as a matter of law. However, the record is replete with evidence of Defendant's reckless, knowing, and willful misconduct directed at Plaintiff and toward the public generally. Defendant acknowledges that it takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. [DE 53, Plaintiff's December 9, 2016 Rule 56.1 Statement of Material Facts in support of his motion for summary judgment (hereinafter "Rule 56.1 Statement) ¶ 38]. Yet, Defendant denies that it is required to do so for any of the thousands of judgment accounts it collects on annually. [Rule 56.1 Statement ¶ 39; 6] ("I think it's unreasonable. I don't think it's a reasonable required practice.").

The record makes clear that Defendant chose not to check the e-courts website to confirm the validity of the thousands of judgments it collected on, despite knowing that many of the judgments had likely been vacated. When Defendant executed on Plaintiff's wages in 2015, it was aware that New York had a problem with sewer service, particularly in consumer collections cases, and that consumer defendants are therefore likely to attempt to vacate those judgments. [Rule 56.1 Statement ¶ 71-75]. Thus, when Defendant executed on thousands of judgment accounts, it knew that many among them had been vacated. A jury could reasonably determine that this reckless misconduct—which resulted in the unlawful taking of Plaintiff's property— justifies a punitive damages award.

As Defendant acknowledges, default judgments obtained prior to the 2009 *Pfau* consent order are even more likely to be the result of sewer service, and therefore more likely to be vacated by the consumer. [Rule 56.1 Statement ¶ 76]. Defendant points out that it did not represent Discover Bank in the collections case and did not procure the false affidavit of service

that led to the default judgment. However, given Defendant's knowledge of the prevalence of sewer service in consumer collection cases, Defendant had even greater reason to question the validity of default judgments obtained by other law firms. By failing to file a substitution of attorney or to inform Mr. Callender that it had been retained by Discover Bank, Defendant further ensured that it would not be informed about Plaintiff's order to show cause.

In short, Defendant executed on thousands of default judgments with the knowledge that a number of the judgments had been vacated. It's only justification for this flagrant disregard for Plaintiff's rights—and the rights of other consumers—was that it would be too burdensome to verify the judgment before issuing the income execution. A reasonably jury could find that this reckless conduct, and the palpable harm it caused, warrants the imposition of punitive damages against Defendant.

## VI.    CONCLUSION.

For these reasons, Plaintiff prays for the Court to deny Defendant's motion for partial summary judgment.

Dated: Brooklyn, New York
      January 6, 2017

                               Respectfully submitted,
                               */s/*
                               Ahmad Keshavarz
                               ATTORNEY FOR PLAINTIFF
                               The Law Office of Ahmad Keshavarz
                               16 Court St., 26th Floor
                               Brooklyn, NY 11241-1026
                               Phone: (718) 522-7900
                               Fax:    (877) 496-7809
                               Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Carol Lastorino, Esq.,
Attorneys for Defendant Forster & Garbus, LLP
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11566
Tel. (516) 357-3000
Fax. (516) 357-3333
carol.lastorino@rivkin.com


Dated:  Brooklyn, NY
        January 6, 2017
         /s/
        Ahmad Keshavarz