UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VICTOR CALLENDER,

                                    Plaintiff,

-against-

FORSTER & GARBUS, LLP,

                                    Defendant.
-------------------------------------------------------------------X

Index No.: 1:15-cv-05813-AKH

**Affidavit of Victor Callender**

VICTOR CALLENDER, being duly sworn, deposes and says:

1. I am the Plaintiff herein, and as such am familiar with the facts and circumstances set forth herein. I make this affidavit in support of Plaintiff's Motion for Summary Judgment.

2. On July 27, 2005, Discover Bank initiated a lawsuit against me in New York County Civil Court, styled *Discover Bank IOT Discover Card v. Victor Callender*, Index No. CV-032484-05/NY (Supreme Court of the State of New York, New York County), according to the documents in the court file.

3. I was never served with a summons and complaint in that case.

4. Discover Bank, through then-attorney Mann Bracken, LLP filed an affidavit of service that falsely alleged that I was served via substituted service on my 17 year old son "Jason Callender."

5. I had no children in 2005, let alone a 17 year old son named "Jason."

6. A default judgment was entered against me on December 21, 2005 according to the court file.

7. I had no knowledge of the lawsuit until on or about May, 2012, when I obtained a copy of my credit report and saw the judgment against me.

1

8. On May 22, 2012 I filed a *pro se* Order to Show Cause ("OSC") to vacate the default judgment.

9. On or about May 30, 2012, I served the OSC on Discover Bank's attorney of record in the case, Mann Bracken, LLP, via certified mail at its address in Rochester, NY.

10. On June 20, 2012—the return date of the OSC—no one appeared on behalf of Discover Bank. The Court therefore vacated the judgment and accepted my answer as filed.

11. The Court also restored the matter to the calendar for August 20, 2012 and told me that it would be responsible for notifying Discover Bank's counsel of the next court date.

12. No one appeared on behalf of Discover Bank for the August 20, 2012 court date. Accordingly, the Court dismissed the case against me.

13. In the summer of 2012, I began to receive collection letters from Forster & Garbus, LLP ("F&G") seeking to collect a putative debt owed to Discover Bank.

14. I did not associate the letters with the collection case because they came from a different law firm (Forster & Garbus) than the one in the collection lawsuit (Mann Bracken), did not refer to a judgment, and stated that I owed a different amount of money.

15. When I received the letters from F&G in the summer of 2012, I thought I had been the victim of identity theft.

16. I wanted F&G to provide proof that I owed the alleged debt, so on October 23, 2012, I filed a complaint with the New York City Department of Consumer Affairs ("DCA") seeking validation of the putative debt.

17. In January, 2013, I received a response from DCA with an enclosed letter from F&G. The letter acknowledged that F&G had received my complaint and forwarded it to their client, Discover Bank, for investigation.

18. Years went by and I heard nothing about the case. I assumed the issue was resolved.

19. On or about January 23, 2015, I noticed that the amount of money in my paycheck had been reduced.

20. My employer did not issue paystubs at that point so I had to go through various channels and finally obtained my paystub.

21. The paystub had the word "garnishment" on it, and my jaw just dropped. I was shocked.

22. I checked on the internet on my phone for what "garnishment" meant and showed it to a friend. He said, "man you must have gotten some girl pregnant" because that is why they would garnish your wages. I stayed up the whole night stressed thinking, could that be? I thought it through, but by the next morning realized that could not be because I am not that kind of man.

23. I had not received any notice of garnishment, and therefore I did not know who was garnishing my wages.

24. Over the next two months I made repeated attempts to obtain a copy of the execution notice, but to no avail. I repeatedly emailed my employer to get copies of papers that would tell me who was garnishing me and why.

25. I called my employer's corporate headquarters in Virginia and was told I was being garnished for an $11,000 judgment.

26. I was shocked that someone was trying to collect that much money from me. I was sure that they would garnish my wages for the rest of my life because there was no way I could pay that much money.

27. Finally, around April 1, 2015, my employer forwarded me a copy of the income execution.

28. The income execution said I owed $11,517.27.

29. This was the first time I learned that the wage garnishment was related to the debt that F&G

3

had attempted to collect from me in 2012 through the collection letters.

30. After considerable delay and aggravation I was able to obtain legal counsel.

31. My lawyer determined that the debt for which my wages were being garnished was the same debt that formed the basis of the 2005 collection suit and subsequent default judgment, which I successfully vacated in 2012.

32. This was also the first time that I learned that the debt that F&G had attempted to collect from me in 2012 was the same debt that had been the subject of the 2005 suit and judgment, which had been vacated.

33. On April 15, 2015, my lawyer wrote a letter to F&G demanding that it cease garnishing my wages and return all the money it had collected from me. After repeated phone calls and messages to F&G, F&G complied with this demand on April 23, 2015.

34. F&G's conduct caused me to experience emotional and mental pain and anguish, embarrassment, and humiliation.

35. The unlawful garnishment happened at an especially vulnerable time for me and my family. I had been laid off from a well-paying job four months prior to the garnishment, and had just started working again at a job that paid less than half of what my previous job paid. In order to make ends meet, my wife was forced to place our young children in day care so that she could work outside the home. We were living paycheck-to-paycheck, and the garnishment placed an enormous burden on my already struggling family.

36. During the garnishment I became extremely stressed, anxious, and ashamed. I worried about how I was going to provide for my family. I had trouble sleeping during this time, and would stay up until 3:00 AM most nights, tossing and turning and worrying about the garnishment. My stomach felt like it was twisting in knots, and I often had trouble eating. My personal relationships

suffered as a result of my stress.

37. I also developed hives during this time—a condition that had only occurred once before in my life, due to stress following the death of my brother in 1998.

38. Because of the garnishment I was unable to pay my rent on time for the month of April, 2015.

39. I found it outrageous and offensive that F&G would execute on a vacated judgment.

40. The fact that I was never served with process in the collection case made F&G's conduct feel even more outrageous and offensive.

41. I lost time and incurred expenses fighting to understand what caused the money to be garnished. I also lost time seeking and obtaining legal representation to help me figure out what was going on, to stop the garnishments, and to get me my money back.

State of New York, County of Bronx

_____
VICTOR CALLENDER

Sworn to before me this 9th day of December, 2016

_____
Notary Public

AKHIMIEN EROMOSELE
Notary Public, State of New York
No. 01ER6309974
Qualified in Bronx County
Commission Expires August 18, 20__

5