# EXHIBIT C

CIVIL COURT CITY OF NEW YORK
COUNTY OF NEW YORK
STATE OF NEW YORK                                      Index # 32484NYCV2005

DISCOVER BANK
ISSUER OF THE DISCOVER CARD
3311 MILL MEADOW DRIVE
HILLIARD, OH 43026
                                    Plaintiff(s)
          v.                                           AFFIRMATION OF REGULARITY
                                                       AND DEFAULT JUDGMENT

VICTOR C CALLENDER
410 W 130TH ST
NEW YORK     NY  10027-7531
                                    Defendant(s)

The undersigned, attorney-at-law of the State of New York and attorney of record for the plaintiff(s) herein affirms under penalties of perjury:
1. The summons and verified complaint in this action was:
   ( X ) served by substitute service on the Defendant, Victor C Callender, on July 15, 2005 with the affidavit of service filed with the clerk on July 27, 2005.
2. The additional notice requirements as set forth in CPLR 3215(g) (3) have been complied with.
3. The time of the defendant(s) to appear or answer has expired and the defendant(s) has not appeared or answered herein.
4. The sums sought and the disbursements set forth below are true and accurate. The disbursements have been or will be made accurate. The disbursements have been or will necessarily be made or incurred herein and are reasonable in amount.

| AMOUNT CLAIMED IN COMPLAINT $5,896.87 | | $5,896.87 |
|---|---|---|
| INTEREST at 0% from July 6, 2005 to October 17, 2005 | | $0.00 |
| SUBTOTAL | | $5,896.87 |
| COSTS BY STATUTE | $20.00 | |
| INDEX NUMBER FEE | $45.00 | |
| TRANSCRIPTS AND DOCKETING | $0.00 | |
| SERVICE OF SUMMONS & COMPLAINT | $25.00 | |
| POSTAGE | $0.00 | |
| SHERIFF'S FEES ON EXECUTION | $40.00 | |
| TOTAL COSTS | $130.00 | |
| TOTAL JUDGMENT AMOUNT | | $6,026.87 |

5. Wherefore, it is required that judgment be entered accordingly.

Dated: October 17, 2005

                                        Allen D. Friedman, Esq.
                                        Patricia A. Blair, Esq.
                                        Christa L. Muratore, Esq.
                                        Maria J. Reed, Esq.

Now on motion of Wolpoff & Abramson, LLP an attorney for plaintiff, 300 Canal View Blvd., 3rd Floor, Rochester, New York, it is adjudged that Plaintiff, Discover Bank ISSUER of The Discover Card, 3311 MILL MEADOW DRIVE, HILLIARD, OH 43026 do recover of the defendant(s) Victor C Callender, herein residing at 410 W 130TH ST, NEW YORK     NY  10027-7531, the sum of $5,896.87 with interest of $0.00, together with $130.00 costs and disbursements, amounting in all to the sum of $6,026.87 and that the Plaintiff have execution therefore.

W&A# 139183649                                         Clerk

                                                       DEC 21 2005

# EXHIBIT D

Case 1:15-cv-05813-AKH   Document 88-4   Filed 05/10/17   Page 3 of 6

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW YORK
 2                        - - - -

 3   VICTOR CALLENDER,              *    CIVIL ACTION NO.
                                    *    1:15-CV-05813-AKH
 4          Plaintiff,              *
                                    *
 5          vs.                     *
                                    *
 6   FORSTER & GARBUS, LLP and      *
     DISCOVER BANK,                 *
 7                                  *
            Defendants.             *
 8   ---------------------------    *

 9

10

11                    DEPOSITION OF

12              JOEL D. LEIDERMAN, ESQ.

13                 COMMACK, NEW YORK

14                 SEPTEMBER 28, 2016

15

16

17

18

19

20   REPORTED BY: WANDA WILKINS, CSR NO. 30XI00117400

21   JOB NO.     139075

22

23

24

25
```

### Page 26

1          interruption.)
2     Q.     So, Forster and Garbus garnished
3  Mr. Callender's wages based on a vacated
4  Judgment. Is that correct?
5          MS. LASTORINO: Objection to form.
6     A.     Yes. When the case came in to us
7  in 2009 -- it was referred to us in 2009 -- it
8  was a valid Judgment. That Judgment was valid
9  up until the time that Mr. Callender brought an
10 Order to Show Cause and successfully brought the
11 Judgment vacated. However, Forster & Garbus was
12 not aware of that until the time that Mr.
13 Callender's wages were garnished to the extent
14 of approximately $210.00 and we received a
15 letter from -- I believe it was the Urban
16 Justice Center, who advised us, at that time,
17 that the Judgment, unbeknownst to us, had been
18 vacated; and at that time, within a few days
19 thereafter, moneys that had been detected,
20 including marshal's poundage were refunded to
21 Mr. Callender.
22    Q.     Do you know if there were any fees
23 that were associated with the garnishment of Mr.
24 Callender's wages, based on a vacated Judgment,
25 that were not returned to Mr. Callender?

### Page 27

1     A.     No, I do not.
2     Q.     Why -- I'm sorry. Is that the
3  reason why Forster & Garbus garnished my
4  client's wages, based on a vacated Judgment?
5  Were you satisfied that that's the reason?
6          MS. LASTORINO: Objection to form.
7     A.     As far as Forster & Garbus knew,
8  it was a valid Judgment, and that's why we
9  garnished his salary.
10    Q.     Okay. What meaningful attorney
11 review, if any, did Forster & Garbus undertake
12 prior to garnishing my client's wages?
13    A.     Mr. Callender was notified on many
14 occasions of the involvement of our firm and
15 that a Judgment had been entered. Mr. Callender
16 did not do anything to advise this firm that the
17 Judgment had been vacated. In fact, he had made
18 a complaint to the Department of Consumer
19 Affairs. In that complaint, he alleged that he
20 had never had a Discover account, Discover card
21 account. Nevertheless, prior to that time, he
22 had already, with a Discover card account --
23 this particular account -- had gone to court and
24 had the Judgment vacated; but yet, in his
25 complaint to the Department of Consumer Affairs,

### Page 28

1  he never once mentioned the Judgment. He never
2  once said anything about a judgment. He denied
3  that he had a Discover card. That account was
4  considered, therefore -- his complaint was
5  considered to be a fraud or false identity
6  claim, so that we ceased collection on it at
7  that time. We went back to the client. The
8  client investigated that. They were able to
9  manage the application and the signatures and
10 the addresses and the billing statements, et
11 cetera, and determined that it was an invalid
12 fraud. So, there was no knowledge at Forster &
13 Garbus that the Judgment had been vacated. The
14 notice to the -- the Order to Show Cause was not
15 served on Forster & Garbus, despite the fact
16 that Mr. Callender was aware, based on many
17 letters sent to him over the course of time,
18 between 2009 and the date the Judgment was
19 vacated. Never once notified us that he did not
20 owe the debt until he, you know, alleged same to
21 the Department of Consumer Affairs and never did
22 anything to serve us with the Order to Show
23 Cause, despite knowledge of the fact that our
24 client was trying to collect that Judgment.
25    Q.     Anything else?

### Page 29

1     A.     No. At this point, that's my
2  answer.
3     Q.     All right. But I just want to
4  make sure that the record is clear. Prior to
5  issuing -- prior to Forster & Garbus garnishing
6  my client's wages, based on a vacated Judgment,
7  what -- up top point, what meaningful attorney
8  review did Forster & Garbus take to determine
9  whether the Judgment it was executing on was
10 valid, when it issued the execution?
11         MS. LASTORINO: Objection to form.
12         You can answer.
13    A.     When the Judgment was entered --
14 when the account was referred to us with the
15 Judgment, we sent a letter, pursuant to the Fair
16 Debt Collections Practices Act, identifying the
17 fact that there was a -- that there was a
18 Judgment and advising that this firm was now
19 seeking to collect that Judgment; and under the
20 FDCPA, the debt is assumed to be valid and the
21 Judgment is assumed to be valid unless the
22 consumer disputes it, which he did not do at
23 that time. Therefore, we proceed with the
24 assumption that the debt is valid. We follow up
25 with several letters in an attempt to contact

Page 30

1  the consumer to try to collect on it.
2  　　　　　The question of meaningful
3  involvement is an interesting issue on
4  post-judgment cases. You seem to allege that
5  the attorney has to be meaningfully involved in
6  every, every aspect of that case. However, if
7  you look at the history of meaningful
8  involvement under the FDCPA, I believe it has to
9  do more with the impression of a least
10 sophisticated consumer. Least sophisticated
11 consumer, okay -- if something comes out on
12 attorney letterhead, there have been courts that
13 have said that that raises the price of poker;
14 and so, in New York, we have the Greco vs.
15 Trauner case, which allows a disclaimer to be
16 placed in that. But that's on pre-legal cases,
17 pre-litigation cases. This is a judgment file.
18 So, clearly, I think even the least
19 sophisticated consumer would recognize that a
20 letter from a law firm that says a Judgment has
21 been entered -- well, the price of poker has
22 already gone up. It went up when he was sued in
23 2005. Okay. He was aware of that Judgment on
24 several occasions. So, in terms of attorney
25 meaningful involvement, there's no obligation

Page 31

1  that we go forward, other than to seek to
2  collect what we consider to be a valid debt for
3  various reasons. We rely on the client that the
4  Judgment was entered. It was, in fact, a valid
5  Judgment at that time the case was referred to
6  us, in 2009. It was a valid Judgment in 2005,
7  when it was entered. It was a valid Judgment,
8  up until the court determined that it was not a
9  valid Judgment, based on an Order to Show Cause
10 which was not served upon Forster & Garbus and
11 that Forster & Garbus had no awareness of.
12 　　　　　So, in terms of our involvement,
13 had Mr. Callender sought to contact our office
14 in such a way as to bring to our attention that
15 for some reason, this Judgment was not valid,
16 that would have been explored, but I don't see
17 that in anything that I reviewed. I don't see
18 it in the -- I don't see it in the service of
19 the Order to Show Cause, which was not served
20 upon Forster & Garbus, despite the fact that
21 Forster & Garbus had sent many and had many
22 communications to Mr. Callender when Mr.
23 Callender made his DCA complaint. He did not
24 say, "Oh, this Judgment is invalid. I have a
25 Judgment against me. Forster & Garbus is

Page 32

1  seeking to, you know, collect a judgment, which
2  is enforceable." That was not his complaint to
3  the DCA. His complaint to the DCA is "I didn't
4  have a Discover card."
5  　　　Q.　　So, let me make sure if I
6  understand your -- you raise a lot of issues.
7  So, let's go through them.
8  　　　A.　　Surely.
9  　　　Q.　　And I thank you for that. I
10 appreciate it. One thing I'm trying to get
11 specifically, is it Forster & Garbus's position
12 that when it executes on someone's wages, based
13 on an alleged Judgment, is it Forster & Garbus's
14 position that it is not required to do a
15 meaningful attorney review of the facts and
16 circumstances of the consumer's account, the
17 alleged Judgment, prior to executing on those
18 wages?
19 　　　A.　　No. There was a review done.
20 There's a review done by an attorney before the
21 execution is issued and an attorney reviews the
22 restraining notice; but it's based on
23 information that is retained in the file at that
24 time, such as, you know, a Judgment, Judgment
25 information. The restraining notice or income

Page 33

1  execution could not be issued if there was a
2  vacated Judgment because that Judgment and
3  information would be reviewed -- would be
4  removed from the computer file. So, it would be
5  impossible to produce a Judgment -- a
6  restraining notice or an income execution or a
7  post-judgment enforcement device. So, the
8  review is done based on the records that are
9  there.
10 　　　　　As to whether or not there was a
11 bankruptcy, some of our clients do require
12 certain, what we call, "scrubs." Bankruptcy,
13 military, deceased and they require that at
14 various times; and over the years, that's
15 changed. So, in 2009, I can't tell you exactly
16 which clients and what that -- you know, who
17 required certain scrubs, but a lot of clients
18 today require scrubs. Not only upon the initial
19 referal, which is maybe what the procedure was
20 back in 2009, but now, they're required before
21 you enter the Judgment and before you seek to
22 execute on the Judgment. So, before doing so,
23 we will run another bankruptcy scrub to make
24 sure that the person didn't file bankruptcy in
25 the interim. We will do a military scrub to