**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
VICTOR CALLENDER

                Case No.: 1:15-cv-05813-AKH

          Plaintiff,

    -against-

FORSTER & GARBUS, LLP

          Defendants.
------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSAL PURSUANT TO**
**RULE 8 [DE 80]**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...............................................................................................1

II.  THE RULE 56 STANDARD FOR SUMMARY JUDGMENT ........................................1

III.  PRIOR ORDERS ON CROSS MOTIONS FOR SUMMARY JUDGEMENT ...………. 1

IV.  UNDISPUTED KEY FACTS ESTABLISHING  ................................................

V.  ARGUMENT ..........................................................................................

A. GBL 349 LIABILITY FOR 1) EXECUTING ON A VACATED JUDGMENT AND 2) MISREPRESENTING MEANINGFUL ATTORNEY INVOLVEMENT IN GARNISHMENT ............................................................................

    1.  F&G's misconduct was consumer oriented………………………………..

    2.  F&G's misconduct was "deceptive or misleading"……………………….

       i.  Collecting on a vacated judgment deceptive as a matter of law………

       ii.  Falsely representing meaningful attorney involvement is deceptive…..

    3.  F&G's  misconduct inflicted injury on Plaintiff  ...........................................

B. PLAINTIFF HAS SET FORTH A BASIS FOR PUNITIVE DAMAGES………….

    1.  Plaintiff need only show a conscious disregard of Mr. Callender's rights …………………………………………….…………………………..

    2.  Plaintiff provides more than a sufficient factual basis for a punitive damage question to go to the jury ……………………….

       a.  Sewer service is a widespread problem in New York………………

       b.  F&G knows sewer service is widespread, and was the lead defendant in *Pfau*, which documented thousands of instances of sewer service…

c.  Despite knowing how common it is for consumers to vacate judgments given the prevalence of sewer service, it is F&G's "regular business policy" to take no steps to determine whether a judgment has been vacate when its attorneys signs an income execution or bank restraint…………………………………………………………..

VI.   CONCLUSION.................................................................................................................

# TABLE OF AUTHORITIES

## Cases

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449, 2015 WL 7758894, (S.D.N.Y. Dec. 1, 2015) ...................................................................................................................................8

*Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F. Supp. 579, 586 (S.D.N.Y. 1989) ..........13

*Barkley v. Olympia Mortg. Co.*, 557 Fed.Appx. 22, (2d Cir. 2014) ...............................................13

*Brown v. Forster & Garbus, LLP,* et al., Case No. 15-cv-6779-KBF (EDNY) ........................4, 18

*Diaz v. Portfolio Recovery Assocs., LLC*, 2012 WL 661456, (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, 2012 WL 1882976 (May 24, 2012)...................................................

*Eric M. Berman, P.C. v. City of N.Y.,* 895 F. Supp. 2d 453, 460 (E.D.N.Y. 2012), *vacated and remanded*, 796 F.3d 171 (2d Cir. 2015)........................................................................................16

*Francis v. LVNV Funding, et al.*, Case No. 1:15-cv-03757 (ED NY).   ..................................5, 18

*Fraser v. Doubleday & Co., Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). ..............................13

*Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, (N.D.N.Y. 2012) .............................................................................................................................................23

*Infanti v. Scharpf*, 2008 U.S. Dist. LEXIS 45501, (E.D.N.Y. June 10, 2008). .......................24, 25

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012) .........................................................8

*Martinez v. LVNV Funding, LLC, et al*., 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016)..........7, 10

*Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936, 961 N.Y.S.2d 743 (Dist. Ct. 2013)............10

*Orlander v. Staples, Inc., 802 F.3d 289* (2d Cir. 2015) ...................................................................

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741 (1995)............................................................................................................... *passim*

*Pfau v. Forster & Garbus, et a*l., Index No. 2009-8236 (Supreme Court of the State of New York, County of Erie) ..................................................................................................... *passim*

*Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2005).....................................................................23, 25

*Rocanova v. Equitable Life Assur. Soc. Of U.S.*, 83 N.Y.2d 603, 613 (1994)........................14, 15

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir.1988) ...................................................................23, 24

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP*, 163

F.Supp.3d 109 (S.D.N.Y. 2016).............................................................................7, 10

*Scott v. Greenberg*, No. 15-CV-05527 (MKB), 2017 WL 1214441, (E.D.N.Y. Mar. 31, 2017).  .7

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)....................................................................

*Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) ("*Sykes I*") ....................

*Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 283–84 (S.D.N.Y. 2012), ("*Sykes II*") *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ..............................16

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, (S.D.N.Y. 2005)...................13, 15

*U.S. v. Erie County, NY*, 724.Supp.2d 357 (W.D.N.Y. 2010) .......................................23

*Williams v. Cappola*, 804 N.Y.S.2d 172 (4th Dep't 2005)............................................13

*Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (2d Div, 2010)). ...............................14, 15

*W.S.A., Inc. v. ACA Corp.*, 1998 WL 635536, (S.D.N.Y. Sept. 15, 1998) ............................14, 15

## Rules

Fed. R. Civ. P. 8.........................................................................................22-24

Fed. R. Civ. P. 12(b)(6)................................................................................23, 24

## Statutes

N.Y. Gen. Bus. Law § 349.................................................................................. *passim*

## Treatises

23 N.Y.Jur.2d Conversion, § 74 (1982).....................................................................13

## I.      INTRODUCTION

Plaintiff Victor Callender ("Plaintiff" or "Mr. Callender") hereby submits this Memorandum of Law in Opposition to the Motion For Partial Summary Judgment And Dismissal Pursuant To Rule 8 [DE 80] filed by Defendant Forster and Garbus, LLP ("F&G" or "Defendant").

## II.      PROCEDURAL HISTORY

On December 9, 2017, the parties filed cross-motions for partial summary judgment. Plaintiff filed for summary judgment for liability for his FDCPA claims. Defendant filed for summary judgment as to Plaintiff's GBL 349 claim, and claim for punitive damages for conversion and for GBL 349. On February 16, 2017 the Court issued an ECF order [DE 71] denying Plaintiff's motion for summary judgment.  That same day, the Court issued another ECF order [DE 72] granting Defendant's motion for summary judgment. The Court dismissed Plaintiff's GBL 349 and conversion claims, with leave to re-file.  On March 10, 2017, Plaintiff filed a Second Amended Complaint ("SAC"), DE 73.  On March 24, 2017 Defendant filed an answer [75] raising the affirmative defense of bona fide error. In response, on April 3, 2017 Plaintiff filed a Motion to Strike Defendants Affirmative Defense of Bona Fide Error [DE 76] as being devoid of factual support. At the April 7, 2017 status conference Defendant stated it would withdraw the bona fide error defense. On April 10, 2017 the Court issued a formal order denying as academic Plaintiff's Motion to Strike given Defendant's oral representation at the status conference. On April 14, 2017 Defendant file an Amended Answer [DE 79] to the SAC, and formally removed the bona fide error affirmative defense. On May 9, 2017 Defendant filed a Motion For Partial Summary Judgment And Dismissal Pursuant To Rule 8 [DE 80], to which this Memorandum of Law opposes.

### III.    PRIOR ORDER GRANTING DEFENDANT'S ORIGINAL MOTION FOR PARTIAL SUMMARY JUDGMENT, WITH LEAVE TO RE-PLEAD

The Court provided four reasons for granting [DE 72] Plaintiff's Original Motion for Summary Judgement as to claims under GBL 349, for conversion, and for punitive damages under either. Plaintiff filed a SAC seeking to address the Court's concerns. Importantly, in the motion before the Court now, Defendants have withdrawn two of the four reasons the court provided for dismissing Plaintiff's GBL 349 claims.

First, the Court noted that there is no private right of action for claims under GBL 601 and that the "claim for relief" is dismissed. Apparently that was a reference to a dismissal of Plaintiff's GBL 349 under Defendant's argument that the 349 claim was in fact a back door method of seeking a "claim for relief" under GBL 349.  As discussed below, Defendant has now abandoned that argument, apparently based on the recent and now overwhelming caselaw to the contrary.

Second, the court explicitly dismissed Plaintiff's GBL 349 claim as not providing sufficient specificity how he establishes each of the GBL 349 elements or with sufficient particularity the deceptive acts or practices employed by Defendant.  The Court granted Plaintiff leave to file its SAC to allege his GBL 349 claims with greater specificity, which Plaintiff has done.

Third, the court expressed concern as to precisely what property was alleged to be misappropriated.  In his SAC, Plaintiff plead with more specificity the basis of his conversion claim. Defendant has not sought summary judgment in its second motion for summary judgment. Indeed, Plaintiff has himself moved for summary judgment for his conversion claim, *see* DE 85, pp. 12-16, providing more specificity as to why the garnishment of $206.19 based on a vacated judgment constitutes conversion as a matter of law, even if the money was returned a few

2

months later. Incidentally, in its Opposition to Plaintiff's Motion for Partial Summary Judgment filed earlier today [DE 85 pp. 19, 20] Defendant effectively concedes conversion liability.

Fourth, the court dismissed Plaintiff's claim for punitive damages for conversion for not alleging sufficient mens rea, with leave to replead.   Defendant had argued that Plaintiff did not demonstrate sufficient mens rea to justify a punitive damage award under GBL 349, but the Court never reached that issue as it dismissed the GBL 349 claim, with leave to amend, based on insufficient specificity as to the GBL 349 elements.

## IV.   UNDISPUTED FACTS

Defendant Forster and Garbus, LLP ("F&G") is a New York debt collection law firm. Pl. 56.1 ¶ 1 (hereafter "¶"). Each year, F&G is referred 3,500 judgment accounts, collects on thousands of judgments, and issues thousands of information Subpoenas and Restraining Notices each year. ¶ 2, 3, 6, 7.

On July 27, 2005, Discover Bank initiated a lawsuit against Mr. Callender in New York County Civil Court. ¶ 8.  Discover Bank obtained a default judgment against Mr. Callender on December 21, 2005 when Mr. Callender failed to answer the complaint. ¶ 10.  On May 22, 2012, Mr. Callender filed a *pro se* order to show cause in New York County Civil Court to vacate the judgment for lack of jurisdiction. ¶ 14. As directed by the Court, Mr. Callender served the order to show cause on Discover's counsel of record in the case, Mann Bracken LLP, at their address in Rochester, NY. ¶ 15. No one appeared on behalf of Discover Bank at the return date of the order to show cause on June 20, 2012.  ¶ 16. The Court accordingly vacated the judgment and accepted Mr. Callender's answer as filed.   ¶ 17. The Court then restored the matter to the calendar for August 20, 2012. ¶ 18. In its written order, the Court stated that it would be responsible for notifying the Discover Bank's counsel of the next court date. ¶ 19. When no one

appeared on behalf of Discover Bank at the August 20, 2012 court date, the Court dismissed the case. ¶ 20.

On or around January 2, 2015, Discover Bank, through its debt collection law firm F&G, filed an income execution with New York City Marshal Ronald Moses seeking enforcement of the *vacated judgment* against Mr. Callender—the same judgment that Discover Bank had obtained in 2005 and that the Court had vacated in 2012. ¶ 32.  On or around January 5, 2015, the New York City Marshal, on behalf of Discover and F&G, served the income execution on Dollar Tree Stores, Inc., Mr. Callender's employer. ¶ 33. Thereupon, Mr. Callender's employer began to garnish his wages.¶ 34. The income execution stated it was for $11,527.27, accruing interest at 9% per year. .¶ 85-87.

Mr. Callender realized he was being garnished when he received his paycheck on or about January 23, 2015. ¶ 53. With the assistance of counsel, Ms. Callender ascertained that the debt for which his wages were being garnished was the same Discover Bank claim that formed the basis of the 2005 lawsuit and the judgment he had successfully vacated in 2012. ¶ 55. On April 15, 2015, Mr. Callender's counsel wrote F&G, demanding that it cease garnishing his wages and restore to him all monies collected. ¶ 56. After repeated phone calls and messages, F&G complied with this demand on April 23, 2015. ¶ 57.

Defendant was on notice as to how widespread sewer service is in NY, and thus that orders vacating judgments are also common. F&G have repeatedly been sued for collecting on vacated judgments. ¶ 76-84. F&G has been sued at least twice just in the last two for collecting on vacated judgments. ¶ 76 *See* Keshavarz Decl. [Exhibit Y, the August 26, 2015 complaint from *Brown v. Forster & Garbus, LLP*, et al., Case No. 15-cv-6779-KBF (SDNY)]; [Exhibit Z, the June 26, 2015 complaint from *Francis v. LVNV Funding, et al.*, Case No. 1:15-cv-03757

(EDNY)].   F&G was the lead defendant in a special proceeding suit brought by the Chief Administrative Judge for the New York State Unified Court System alleging that F&G, along with 36 other law firms, utilized process servers that systematically engaged in sewer service. ¶ 77 *See* Keshavarz Decl. [Exhibit AA, the July 9, 2009 petition in *Pfau v. Forster & Garbus, et al*., Index No. 2009-8236 (Supreme Court of the State of New York, County of Erie) p. 7 ¶ 34] ("The harm caused to civil defendants subjected to default judgment where they have not been properly served, and to the courts that processed the defaults, is near incalculable."). F&G entered into a consent agreement in the Pfau case whereby it agreed to implement a series of policies and procedures designed to prevent sewer service. ¶ 78 *See* Keshavarz Decl. [Exhibit BB, the June 23, 2010 consent order in Pfau v. Forster & Garbus, et al., Index No. 2009-8236 (Supreme Court of the State of New York, County of Erie)].

F&G was also aware of a recent class action in the United States District Court for the Southern District of New York whereby debt collection law firm Mel S. Harris and Associates, LLC was sued for obtaining over one hundred thousand default judgments using sewer service affidavits. ¶ 79  Thus, in 2015 when F&G executed on Mr. Callender's bank account based on the 2005 default judgment, it was aware that New York had a serious problem with sewer service. ¶ 80.  F&G knew that default judgments that were obtained prior to *Pfau*—such as the collection suit against Mr. Callender—were especially likely to be based on sewer service.  ¶ 81. F&G was therefore aware, when it executed on thousands of judgment accounts, that a number of the judgments it was executing on had been vacated. ¶  82. However, F&G nonetheless maintains that it would be unreasonable for it to check e-courts to see if default judgments it is attempting to execute on have been vacated due to improper service. ¶ 83.

The Defendant's "deceptive or misleading" conduct is blindly issuing wage garnishments

(and bank restraints) without taking any steps—much less conducting a meaningful attorney review—to determine whether the judgment has been vacated.  F&G is a debt collection law firm. ¶ 1. Each year, F&G is referred 3,500 judgment accounts, collects on thousands of judgments, and issues thousands of information Subpoenas and Restraining Notices. ¶ 2, 3, 6, 7.

Ronald Ferraro was the lawyer who signed the income execution in this case. ¶ 35. F&G's computer system automatically generates income executions for its attorneys to sign. ¶ 36.  Mr. Ferraro trusted that the information contained in the computer system was accurate, and therefore did not take steps to independently verify that the income executions he signed were for valid judgments. ¶ 37. Mr. Ferraro's involvement with the garnishment was limited to merely signing the income execution, then passing it on to an employee who mailed it to Mr. Callender's employer. ¶ 38. Mr. Ferraro took no steps to independently verify that the information contained in the income execution was accurate. ¶ 39.

It takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. ¶ 40. However, F&G believe that it would be unreasonably burdensome to take two minutes to check the ecourts website prior to issuing an income execution to ensure that the putative judgment is valid. ¶41.  Yet, Defendant takes numerous steps—such as confirming place of employment and location of assets—to ensure that the wage garnishments it issues will result in the payment of funds. ¶ 42. F&G admits that it was unfair to Mr. Callender to garnish his wages based on a vacated judgment. ¶ 52. F&G have repeatedly been sued for collecting on vacated judgments. ¶ 76. F&G was therefore aware, when it issued the wage execution, that there was a substantial and unjustified risk that it would execute on a vacated judgment.

## A.  WHAT DEFENDANT DOES NOT DISPUTE

Defendant has abandoned its argument that Plaintiff's GBL 349 claim must be dismissed because GBL 601, which does not allow for a private right of action, *necessarily* precludes any

GBL 349 claims based on deceptive debt collection. *See* Defendant's Memorandum of Law in Support of Its [Original] Motion for Partial Summary Judgment, DE 51 pp. 3-5.  Apparently the abandonment was caused by the overwhelming authority against its position. Court have repeatedly held the while a GBL 601 claim does not, by itself, establish a violation of GBL 349, a Plaintiff may still establish a "free-standing" GBL 349 claim based on deceptive debt collection so long as he meets each of the three GBL 349 elements.  *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP*, 163 F.Supp.3d 109 (S.D.N.Y. 2016); *Martinez v. LVNV Funding, LLC, et al*., 2016 WL 5719718 at * 3 (E.D.N.Y. Sept. 30, 2016).; and *Scott v. Greenberg*, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *20 (E.D.N.Y. Mar. 31, 2017).  *See also* DE 64, Plaintiff's Memorandum of Law In Opposition To Defendant's Motion for Partial Judgment, pp. 9-14.

Defendant also does not contend that it is not liable for conversion for seizing Plaintiff's wages based on a vacated judgment. Rather, Defendant merely argues that Plaintiff has not established a sufficient level of *mens rea* to allow a reasonable jury to award punitive damages.

Lastly, Defendant does not dispute that it garnished Mr. Callender's wages based on a vacated judgment.

## B.  GBL 349 LIABILITY FOR EXECUTING ON A VACATED JUDGMENT AND BY MISREPRESENTING MEANINGFUL ATTORNEY INVOLVEMENT IN GARNISHMENT

### 1.  Public policy of GBL 349.

N.Y. G.B.L. § 349 ("GBL 349") is a broadly protective consumer protection measure, which bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides a cause of action for violations. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 28 (2000). To assert a claim under GBL 349, "a plaintiff must allege that a

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc., 802 F.3d 289, 300* (2d Cir. 2015) *(citing Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)); *see Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under General Business Law section 349).

### 2.   F&G's conduct was consumer oriented.

In order to demonstrate misconduct is consumer oriented, the consumer must demonstrate "that the acts or practices have a broader impact on consumers at large," but the statute does "not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995). "Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."   *Id*. The consumer-oriented" requirement is construed liberally. *See Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015) (citation omitted).

The test is whether the actions complained of "***potentially*** affect similarly situated consumers." *Oswego.* at 26–27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (emphasis added). Plaintiffs in *Oswego* were union pension funds that opened accounts with the defendant bank. Plaintiffs complained that the bank failed to pay appropriate interest on the balances in their accounts. The Court of Appeals held that plaintiffs satisfied the "consumer-oriented" element of Section 349, reasoning that "defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the [plaintiff] funds with standard documents presented to customers upon the opening of accounts." *Id*., 85 N.Y.2d at 26, 623 N.Y.S.2d 529,

647 N.E.2d 741.

As in *Oswego*, Defendant's dealt with Mr. Callender in the same manner it deals with the thousands of other putative judgment creditors it attempts to execute upon: it takes no steps to determine, prior to signing an execution, whether a judgment has been evidence. The factual basis for Plaintiff's claim that Defendant's misconduct is consumer oriented – i.e. that may "*potentially* affect similarly situated consumers," *Oswego.* at 26–27 – is outlined in the section C. 2. c. below. For brevity, that section is incorporated by reference.

The caselaw supports Plaintiff. In *Midland Funding, LLC v. Giraldo*, a consumer defendant adequately stated a GBL 349 counterclaim against a debt collector plaintiff who allegedly filed a collections lawsuit without any evidence that the defendant owed the debt. 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. 2013). The *Giraldo* court found the conduct consumer-oriented because:

> [T]he conduct complained of," at its heart, involves the "routine filing" of assigned debt lawsuits by plaintiff "despite a lack of crucial, legally admissible information" or "sufficient inquiry" into whether the claims are meritorious. When considered together with defendant's allegation that plaintiff's deceptive acts and practices "affect the consuming public at large" and are "not limited to the defendant," the challenged conduct and practices clearly raise issues beyond any "private contract disputes." Such allegations therefore fall within the broad scope of GBL § 349.

*Id*. at 752.

The *Giraldo* decision is instructive. F&G's blind signing of stacks of executions is similar to Midland's "routine filing" of collection lawsuits without sufficient inquiry into whether the claims are meritorious.  Both are routine conduct that is consumer oriented. The *Giraldo* plaintiff alleged that the "deceptive acts and practices affect the consuming public at large and are not limited to the defendant". *Midland Funding, LLC v. Giraldo*, at 752 (internal quotations omitted).

### 3.   F&G's conduct was "deceptive or misleading"
#### i.   Collecting on a vacated judgment is deceptive as a matter of law.

F&G attempted to collect on a vacated judgment from Mr. Callender by garnishing his wages. Attempting to collect on a vacated judgment is vacated is deceptive under GBL 349 as a matter of law. *Martinez v. LVNV Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016). A reasonable consumer "would likely be misled into believing that a valid court judgment existed and this belief could coerce a reasonable consumer into paying the judgment under the mistaken belief that they could be subject to even harsher penalties for failing to pay a valid legal judgment." *Id.*

Defendant argues Plaintiff's claims are a private dispute governing a specific garnishment issued be a specific law firm against a specific consumer. This argues too much. Any collection lawsuit or garnishment will, by definition, involve only the single debt collector and the single consumer.   That would mean GBL 349 claims could never arise from debt collection litigation or garnishment. But such claims based on an individual collection lawsuit about. *See e.g. Martinez, supra*, (collecting on vacated judgment states a GBL 349 claim, and is deceptive as a matter of law), *Samms, supra,* (filing collection lawsuit seeking attorney's fees when not authorized by contract or status violates GBL 349).

### ii.   Falsely representing meaningful attorney involvement is deceptive.

By garnishing Mr. Defendant's "deceptive or misleading" conduct is blindly issuing wage garnishments (and bank restraints) without taking any steps—much less conducting a meaningful attorney review—to determine whether the judgments it executes on have been vacated. Executing on vacated judgments are "act[s] or practice[s]" that are materially "deceptive or misleading" because it represents to consumers such as Plaintiff that 1) there is a valid judgment when there is not, 2) Defendant has a right to execute on their wages when it does not, 3) that an attorney has performed a meaningful attorney review to determine that there

exists a valid judgment when there is not, and 4) the consumers owe costs of court and post-judgment interest when, given the absence of a judgment, there is no adjudication that those amounts are owed.

Defendants' failure to perform a meaningful attorney review is deceptive and misleading the reasonable consumer under GBL 349 for the same reasons it is false, deceptive, and misleading to the least sophisticated consumer under the FDCPA. *See* DE 85, Plaintiff's Motion for Summary Judgment, pp. 16-21, incorporated by reference, describing the requirements of a meaningful attorney review. Deceptive representations in collection lawsuits, including representation of a meaningful review of attorney issued papers, have held to state a GBL 349 claim as they were materially "deceptive" or "misleading,: as well as consumer oriented. *Diaz v. Portfolio Recovery Assocs., LLC,* 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, 2012 WL 1882976 (May 24, 2012) ("Having been served with a complaint…plaintiff may have reasonably assumed that an attorney had conducted a meaningful review of the complaint and was representing that the claims in the complaint were actionable.") (denying motion to dismiss GBL 349 and FDCPA claims); and *Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) (Allegation of robo-signing thousands of affidavits of merit falsely claiming personal knowledge of key facts necessary for the entry of default judgments states a claim for violations of GBL 349). As in these cases, Defendants' garnishment of Mr. Callender's wages was misleading because it was likely to deceive even a reasonable consumer into believing there had been meaningful attorney review and that Defendant had the authority to garnish his wages.

### 4.    F&G's  misconduct inflicted injury on Plaintiff

Defendant's conduct harmed Mr. Callender because it caused him to be deprived of his wages at a time of great financial hardship for Mr. Callender and his family. ¶ 58-75.

## C.  PLAINTIFF HAS SET FORTH A BASIS FOR PUNITIVE DAMAGES

F&G argues that Plaintiff has failed to state a claim for punitive damages for his conversion claim. F&G relies on this Court's February 16, 2017 order, which dismissed Plaintiff's punitive damages claim and granted Plaintiff leave to file an amended complaint. F&G claims that "Plaintiff's alleged basis for punitive damages in the Second Amended Complaint remains completely unchanged from that which plaintiff set forth in the First Amended Complaint." F&G goes on to argue that "[i]nsofar as the Court has already determined that such basis is insufficient to support a basis for punitive damages, the Court should summarily dismiss the portions of plaintiff's Second Amended Complaint that seek punitive damages." This argument relies on a complete misunderstanding of the Court's February 16 order.

The February 16 order directed plaintiff to amend his complaint to provide more particularized allegations in support of his conversion claim. Since Plaintiff's punitive damages claim is based on his conversion claim, the punitive damage claim was necessarily dismissed because the FAC failed to plead conversion with sufficient particularity. The Court made no finding with respect to the sufficiency of the punitive damage claim—the claim was dismissed simply because Plaintiff's conversion claim was not sufficiently supported by factual allegations. The SAC contains more specific factual allegations in support of the conversion claim. It is simply undisputed that F&G wrongfully garnished $204.19 from Plaintiff's wages based on a vacated judgment.

### 1.  Plaintiff need only show conscious disregard in order to be entitled to a jury question on punitive damages.

Defendant does not dispute that punitive damages are available for conversion and for violations of GBL 349. Rather, Defendant merely argues that the summary judgment record does

not support a punitive damage award. In reaching this conclusion, Defendant applies an erroneous standard for punitive damages, misinterprets the applicable law, and ignores critical evidence of Defendant's willful and reckless misconduct.

New York law provides for punitive damages for conversion where the conversion was accomplished with malice or insult, or with reckless or willful disregard for plaintiff's rights. 23 N.Y.Jur.2d *Conversion*, § 74 (1982); *Fraser v. Doubleday & Co., Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). Indeed, New York courts have long recognized that a tort defendant's reckless conduct can form the basis for an imposition of punitive damages. *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F. Supp. 579, 586 (S.D.N.Y. 1989) ("Under New York law, punitive damages may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right.")(internal quotations omitted).

Additionally, "punitive damages may be awarded for a violation of GBL § 349." *Barkley v. Olympia Mortg. Co.*, 557 Fed.Appx. 22, note 1 (2d Cir. 2014)(*citing Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Div, 2010)). A plaintiff may recover punitive damages where the defendant's violation of GBL § 349 is "so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." *Wilner* 893 N.Y.S.2d at 218. There, the New York Court Appellate Division, Second Department held that  a defendant's failure to reach a timely decision on an insurance claim, in violation of GBL § 349, could support the imposition of punitive damages because a jury could determine that the defendant's conduct was "so flagrant as to transcend mere carelessness." *Id.*

 Defendant argues that punitive damages are unavailable unless Defendant's conduct evinces a "high degree of moral turpitude" or the "type of wanton dishonestly typically

associated with crime." Moreover, Defendant argues that punitive damages are unavailable because Plaintiff cannot demonstrate that Defendant's conduct was directed toward the public generally. This formulation misstates the relevant law and confuses the standard for punitive damages for conversion and GBL § 349 claims with the heightened standard applicable to contract claims and certain fraud claims.[1] *See Rocanova v. Equitable Life Assur. Soc. Of U.S.*, 83 N.Y.2d 603, 613 (1994). These additional requirements—"known, respectively, as the "public wrong" and "extraordinary egregiousness" requirements"—are not applicable for typical punitive damages claims. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 262 (S.D.N.Y. 2005).

The imposition of this higher standard for punitive damages in contract and related fraud cases is justified by the principle that contract law seeks merely to restore the parties to the positions they would have occupied if the breaching party had performed under the contract. *Id.* This factor is simply not present in conversion and GBL § 349 cases. Moreover, a higher standard for punitive damages in contract cases is appropriate because the imposition of punitive damages could discourage breaches of contract that the law endeavors to protect. *Id.* at note 12. This justification is inapplicable to this case because the law does not seek to encourage acts of conversion or violations of GBL § 349.

Defendant erroneously relies on *W.S.A., Inc. v. ACA Corp.* for the proposition that the heightened standard for punitive damages in contract and some fraud cases has been extended to apply to all tort claims. *W.S.A., Inc. v. ACA Corp.*, 1998 WL 635536, at *2 (S.D.N.Y. Sept. 15, 1998)(Haight, J). Southern District case law does not support such a finding. While the *W.S.A.,*

---

[1] Plaintiff notes that GBL § 349 requires Plaintiff to prove that Defendant's conduct was "consumer oriented." Thus, a finding of liability as to Plaintiff's GBL § 349 claim would necessarily satisfy the requirement that the offending conduct be aimed at the public generally.

*Inc.* opinion does contain language indicating that the heightened standard is applicable in tort cases generally, that opinion is best understood in the context of a split of authority over which standard to apply in cases alleging fraud-in-the-inducement. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 263-65, note 21 (S.D.N.Y. 2005)(Haight, J)(describing the lack of consensus as to the availability of punitive damages in fraud-in-the-inducement cases and dismissing portions of the *W.S.A., Inc.* opinion as *dicta*).

Defendant's argument that the higher punitive damage standard is applicable where the defendant is an attorney is similarly inapposite. The cases relied upon by Defendant for this proposition involve legal malpractice claims based on breach of attorney retainer agreements. *Williams v. Cappola*, 804 N.Y.S.2d 172 (4th Dep't 2005); *Rosenkrantz v. Steinberg*, 786 N.Y.S.2d 35, 36 (1st Dep't 2004). The cases were therefore treated as contract cases for purposes of determining the standard for punitive damages.

Established case law in New York and the Southern District holds that a defendant's reckless conduct can support the imposition of punitive damages for conversion. 23 N.Y.Jur.2d *Conversion*, § 74 (1982); *Fraser v. Doubleday & Co., Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). Violations of GBL § 349 can also warrant an award of punitive damages where Defendant's conduct evinces a reckless or willful disregard for Plaintiff's rights. *Wilner v. Allstate Inc. Co.*, 893 N.Y.S.2d 208, 218 (2d Div, 2010). Accordingly, a plaintiff seeking punitive damages under this standard can survive a motion for summary judgment if a reasonable jury could conclude, based on the record, that the defendant acted with a reckless disregard for the plaintiff's rights. Plaintiff meets that standard.

2. **Plaintiff provides more than a sufficient factual basis for a punitive damage question to go to the jury.**

   a. **Sewer service is a widespread problem in New York.**

Sewer service is a widespread problem in New York, leading to a large number of default judgements. *See, e.g. Eric M. Berman, P.C. v. City of N.Y.,* 895 F. Supp. 2d 453, 460 (E.D.N.Y. 2012), *vacated and remanded,* 796 F.3d 171 (2d Cir. 2015) (noting 2009 testimony in support of debt collection licensing by a legal services agency that 79% of their clients were not properly served and noting study that 93% of defendants in consumer credit collection cases default).  For example, in granting certification of a class action alleging systematic sewer service that resulted in over 100,000 default judgments, Judge Chin found "substantial support" for the following allegations:

> I make the following findings of fact based upon the depositions, declarations, and exhibits submitted by the parties in connection with this motion ….
>
> Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. (7/31/11 Egleson Decl. ¶¶ 2–4). Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. (*Id.* ¶¶ 9–11, Ex. A). On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. (*Id.* ¶ 11, Ex. A). For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. (*Id.* ¶ 10). Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. (*Id.*). Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. (*Id.*). There were also many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed. (*Id.* ¶¶ 13–23, Ex. B).
>
> These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.
>
> *Sykes v. Mel Harris & Assocs., LLC,* 285 F.R.D. 279, 283–84 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70 (2d Cir. 2015)

   **b.  F&G knows sewer service is widespread, and was a defendant in Pfau, which documented thousands of instances of sewer service.**

Defendant was on notice as to how widespread sewer service is in NY, and thus that

orders vacating judgments are also common. F&G have repeatedly been sued for collecting on vacated judgments. ¶ 76-84. Several New York consumers have filed FDCPA lawsuits in the last two years against F&G for collecting on vacated judgments. ¶ 76 *See* Keshavarz Decl. [Exhibit Y, the August 26, 2015 complaint from *Brown v. Forster & Garbus, LLP*, et al., Case No. 15-cv-6779-KBF (SDNY)]; [Exhibit Z, the June 26, 2015 complaint from *Francis v. LVNV Funding, et al*., Case No. 1:15-cv-03757 (EDNY)].   F&G was sued in a special proceeding brought by the Chief Administrative Judge for the New York State Unified Court System alleging that F&G, along with 36 other law firms, utilized process servers that systematically engaged in sewer service. ¶ 77 *See* Keshavarz Decl. [Exhibit AA, the July 9, 2009 petition in *Pfau v. Forster & Garbus, et al*., Index No. 2009-8236 (Supreme Court of the State of New York, County of Erie) p. 7 ¶ 34] ("The harm caused to civil defendants subjected to default judgment where they have not been properly served, and to the courts that processed the defaults, is near incalculable."). F&G entered into a consent agreement in the *Pfau* case whereby it agreed to implement a series of policies and procedures designed to prevent sewer service. ¶ 78 *See* Keshavarz Decl. [Exhibit BB, the June 23, 2010 consent order in *Pfau v. Forster & Garbus, et al*., Index No. 2009-8236 (Supreme Court of the State of New York, County of Erie)].

F&G was also aware of a recent class action in the United States District Court for the Southern District of New York whereby debt collection law firm Mel S. Harris and Associates, LLC was sued for obtaining over one hundred thousand default judgments using sewer service affidavits. ¶ 79  Thus, in 2015 when F&G executed on Mr. Callender's bank account based on the 2005 default judgment, it was aware that New York had a serious problem with sewer service. ¶ 80.  F&G knew that default judgments that were obtained prior to *Pfau*—such as the collection suit against Mr. Callender—were especially likely to be based on sewer service.  ¶ 81.

F&G was therefore aware, when it executed on thousands of judgment accounts, that a number of the judgments it was executing on had been vacated. ¶ 82. However, F&G nonetheless maintains that it would be unreasonable for it to check e-courts to see if default judgments it is attempting to execute on have been vacated due to improper service. ¶ 83.

> **c. Despite knowing how common it is for consumers to vacate judgments given the prevalence of sewer service, it is F&G's "regular business policy" to take no steps to determine whether a judgment has been vacate when its attorneys signs an income execution or bank restraint.**

F&G dealt with Mr. Callender in the same manner it deals with the thousands of other putative judgment creditors it attempts to execute upon. Importantly, Defendant *itself* admits the same.   "[T]he income execution pertaining to plaintiff resulted from ***regular business practices***..."   Defendant's MSJ, DE 83, p. 10.   That business practice is to have meaningful attorney involvement in determining where the putative judgment creditor may have assets to execute upon:

> As Joel Leiderman at F&G testified at his deposition, a meaningful attorney review was performed pertaining to plaintiff. An income execution is generated after information is input into the computer system. For example, there is a process in place to determine whether the consumer had a place of employment to garnish wages. See Exh. "D" at p. 65. The account then goes through a bankruptcy scrub,[2] a military scrub and a decedent scrub before an income execution is generated. See id. at pp. 34-35. The information is reviewed by a supervisor to confirm employment and other issues as to an income execution and the information is put through processing to the date processing area which produces the actual document to be signed by an attorney. *See id*. at p. 66. F&G "***relies on the integrity of the system***" **when issuing and executing income executions.** *See id*. at p. 67[3]

Defendant's MSJ, DE 83, p. 10 (emphasis added).

This is exactly Plaintiff's point: F&G "relies on the "integrity of the system" when issuing and executing income executions."   But nothing in the system does anything to check to

---

[2] The bankruptcy and military scrubs are automatic computer generated searches. These do nothing to determine whether a judgment has been

[3] Mr. Lederman never testified that any of these steps were actually performed by an attorney except for the signature on the execution.

see if the putative judgment had been vacated, despite the fact they are all years old and all by firms whose identity is unknown to F&G. Pl. Rule 56.1 Statement ¶ 2, 3, 6, 7.   Specifically, Ronald Ferraro, the attorney who signed the income execution as to Mr. Callender, "relied on the integrity of the computer system" to not print out a wage garnishment or bank restraint of the judgment had been vacated. ¶ 36, 37. Mr. Ferraro took no steps to independently verify that the information contained in the income execution was accurate. ¶ 39. However, before an attorney signs he name to any income execution or bank restraint he is required to perform a "meaningful attorney review" to determine whether the judgment he is executing on is still valid, or whether it has been vacated. *See* DE 85, Plaintiff's Motion for Summary Judgment, pp. 16-21, incorporated by reference, describing the requirements of a meaningful attorney review.   Just as in *Oswego*, Mr. Ferraro treated Mr. Callender just as he would treat any other putative judgment creditor: he just signs whatever the computer spits out.

In its MSJ, Defendant continues:

> In fact, the system would not allow F&G to produce an income execution if there was a vacated judgment because the judgment information would be removed from the computer system. See id. at pp. 32-33. Thus, had F&G known that the judgment was vacated, it would have removed the judgment from the system and F&G would not have been able to do any kind of post-judgment enforcement. See id. at p. 134.

Defendant's MSJ, DE 83, p. 10, 11 (emphasis added).

This is no system at all. "[H]ad F&G known the judgment was vacated" then the judgment would have been removed from the system.  But this exactly the point: no one checks to see if the judgment has been vacated.

Plaintiff alleges, and the undisputed evidence demonstrates, that Defendant sends out thousands of wage executions and bank restraints each year for putative judgments obtained years earlier by different law firms. [Rule 56.1 Statement ¶ 2, 3, 6, 7]  Plaintiff knows that sewer service is widespread in New York and that a certain number of judgments it collects on will

inevitably be vacated after being placed with Defendant. [Rule 56.1 Statement ¶ 80-84]. This conduct directly affected the consuming public at large because it assured that any consumer whose judgment account was placed with Defendant and who thereafter vacated that judgment might nonetheless be targeted by Defendant for enforcement of the vacated judgment.

The Defendant's "deceptive or misleading" conduct is blindly issuing wage garnishments (and bank restraints) without taking any steps—much less conducting a meaningful attorney review—to determine whether the judgment has been vacated.  F&G is a debt collection law firm. ¶ 1. Each year, F&G is referred 3,500 judgment accounts, collects on thousands of judgments, and issues thousands of information Subpoenas and Restraining Notices. ¶ 2, 3, 6, 7.

Ronald Ferraro was the lawyer who signed the income execution in this case. ¶ 35. F&G's computer system automatically generates income executions for its attorneys to sign. ¶ 36.  Mr. Ferraro trusted that the information contained in the computer system was accurate, and therefore did not take steps to independently verify that the income executions he signed were for valid judgments. ¶ 37. Mr. Ferraro's involvement with the garnishment was limited to merely signing the income execution, then passing it on to an employee who mailed it to Mr. Callender's employer. ¶ 38. Mr. Ferraro took no steps to independently verify that the information contained in the income execution was accurate. ¶ 39.

It takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. ¶ 40. However, F&G believe that it would be unreasonably burdensome to take two minutes to check the ecourts website prior to issuing an income execution to ensure that the putative judgment is valid. ¶41.  Yet, Defendant takes numerous steps—such as confirming place of employment and location of assets—to ensure that the wage garnishments it issues will result in the payment of funds. ¶ 42. F&G admits that it was unfair to Mr. Callender to garnish his

wages based on a vacated judgment. ¶ 52. F&G have repeatedly been sued for collecting on vacated judgments. ¶ 76. F&G was therefore aware, when it issued the wage execution, that there was a substantial and unjustified risk that it would execute on a vacated judgment.

### d. Mr. Callender is entitled to a jury question for punitive damages for conversion and for violations of GBL 349.

The record provides myriad evidence that F&G knew or should have known that the judgment was vacated and that its compliance policies were insufficient to prevent it from executing on default judgment that were obtained by other law firms through sewer service and that were subsequently vacated by the consumer. A reasonable jury could find that this reckless conduct is sufficiently egregious to merit an award of punitive damages.

Defendant argues—in conclusory terms—that Plaintiff is not entitled to punitive damages as a matter of law. However, the record is replete with evidence of Defendant's reckless, knowing, and willful misconduct directed at Plaintiff and toward the public generally. Defendant acknowledges that it takes about two minutes to check the e-courts website to find out whether a judgment has been vacated. [DE 53, Plaintiff's December 9, 2016 Rule 56.1 Statement of Material Facts in support of his motion for summary judgment (hereinafter "Rule 56.1 Statement) ¶ 38]. Yet, Defendant denies that it is required to do so for any of the thousands of judgment accounts it collects on annually. [Rule 56.1 Statement ¶ 39; 6] ("I think it's unreasonable. I don't think it's a reasonable required practice.").

The record makes clear that Defendant chose not to check the e-courts website to confirm the validity of the thousands of judgments it collected on, despite knowing that many of the judgments had likely been vacated. When Defendant executed on Plaintiff's wages in 2015, it was aware that New York had a problem with sewer service, particularly in consumer collections cases, and that consumer defendants are therefore likely to attempt to vacate those judgments.

21

[Rule 56.1 Statement ¶ 71-75]. Thus, when Defendant executed on thousands of judgment accounts, it knew that many among them had been vacated. A jury could reasonably determine that this reckless misconduct—which resulted in the unlawful taking of Plaintiff's property—justifies a punitive damages award.

As Defendant acknowledges, default judgments obtained prior to the 2009 *Pfau* consent order are even more likely to be the result of sewer service, and therefore more likely to be vacated by the consumer. [Rule 56.1 Statement ¶ 76]. Defendant points out that it did not represent Discover Bank in the collections case and did not procure the false affidavit of service that led to the default judgment. However, given Defendant's knowledge of the prevalence of sewer service in consumer collection cases, Defendant had even greater reason to question the validity of default judgments obtained by other law firms. By failing to file a substitution of attorney or to inform Mr. Callender that it had been retained by Discover Bank, Defendant further ensured that it would not be informed about Plaintiff's order to show cause.

In short, Defendant executed on thousands of default judgments with the knowledge that a number of the judgments had been vacated. It's only justification for this flagrant disregard for Plaintiff's rights—and the rights of other consumers—was that it would be too burdensome to verify the judgment before issuing the income execution. A reasonably jury could find that this reckless conduct, and the palpable harm it caused, warrants the imposition of punitive damages against Defendant.

### D. PLAINTIFF'S SECOND AMENDED COMPLAINT COMPLIES WITH THE REQUIREMENTS OF RULE 8

F&G alleges, at page 14 of its motion, that Plaintiff's SAC fails to conform to the elemental pleading requirements of Rule 8. The SAC is too long, F&G argues, and should therefore be dismissed for failing to conform to Rule 8's requirement that allegations be "simple,

concise, and direct." Rule 8(d). The purpose of this rule is to provide fair notice of Plaintiff's claims. *See U.S. v. Erie County, NY*, 724.Supp.2d 357, 366 (W.D.N.Y. 2010); *see also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)("the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."). Significantly, F&G does not allege that it is unaware of the nature of the claims against it, or of the specific factual assertions that support those claims. *See Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275 (N.D.N.Y. 2012)(even though the complaint is not a simple and concise document, "Plaintiff sufficiently identifies the defendants' conduct that allegedly violated the law. Therefore, the complaint accomplishes the primary purpose of Rule 8's pleading requirements.")

F&G complains that the SAC contains allegations that are also asserted in Plaintiff's December 10, 2016 motion for summary judgment. DE 55. F&G does not explain why that fact has any bearing on a Rule 12(b)(6) motion. F&G further protests that the SAC contains legal arguments, a fact that merits outright dismissal pursuant to Rule 12(b)(6), F&G claims. F&G similarly fails to provide any support for its apparent assertion that the inclusion of legal arguments in a complaint is an appropriate ground for dismissal.

Plaintiff filed her SAC in response to this Court's February 16, 2017 order directing Plaintiff to amend his complaint to "plausibly show "with particularity" the deceptive acts and practices employed by defendant." F&G knew, or should have known that the Court contemplated that the SAC would contain lengthier, more detailed factual allegations concerning the basis for Plaintiff's claims. Nonetheless, F&G chose the dramatic approach of bringing a motion to dismiss, rather than an appropriate remedy, such as a motion for a more definite statement or a motion to strike. *See Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005)("Once

a defendant has been served with a complaint that is defective in this way, it should be met with a motion for a more definite statement under Rule 12(e) or a motion to strike under Rule 12(f), rather than a motion to dismiss under Rule 12(b).")[4]

The cases relied on by F&G for its assertion that dismissal is appropriate are inapposite and should be disregarded. F&G correctly asserts that "Courts are left with the ultimate decision as to whether to proceed with an operative pleading that does not comport with Rule 8." However, courts only dismiss complaints for failure to comply with Rule 8 where the pleading does not provide the defendants with fair notice of the claims against it. Where a complaint does not comply with Rule 8, but nonetheless provides fair notice of the claims, then outright dismissal constitutes abuse of discretion. *Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir. 1988). F&G relies on *Salahuddin* for the proposition that dismissal is an appropriate remedy for failure to comply with Rule 8. F&G neglects to mention, however, that the Second Circuit in *Salahuddin* reversed a District Court's order dismissing a complaint for failure to comply with Rule 8 because it found that the complaint at issue provided fair notice of the nature of the claims. Thus, the District Court abused its discretion by dismissing the complaint.

F&G similarly misapplies *Infanti v. Scharpf,* 2008 U.S. Dist. LEXIS 45501, *5-6 (E.D.N.Y. June 10, 2008). In that case, the Court indeed stated that the complaint's "chaotic jumble drives the Court to exercise its discretion and dismiss the complaint in accordance with the Rule." *Id.* at 2. F&G fails to note that the *Infanti* Court did not actually dismiss the complaint, but rather granted the plaintiff leave to amend. Moreover, the *Infanti* Court's decision

---

[4] Case was decided before *Iqbal* and *Twombly*. The Court therefore applied a notice pleading standard, not the plausibility standard that applies in this case. As such, the Court in *Phillips* would have even greater reason to find that a long, rambling pleading violates Rule 8. The majority of the cases relied on by F&G were decided prior to *Iqbal* and *Twombly*, and therefore evaluate the pleadings under the notice pleading standard. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)("The statement should be plain because the principle function of pleadings under the Federal Rules is to give the party fair notice of the claim asserted so as to enable him to answer and prepare for trial.")

was based on its finding that the complaint did not provide the defendants with adequate notice of the claims against it. Again, F&G motion does not argue that F&G is unaware of the claims against it of the factual bases for those claims. F&G could not, in good faith, make such a claim at this point in the litigation.

It is Plaintiff's position that the SAC is appropriate and is in compliance with Rule 8, given the heightened plausibility standard articulated in *Iqbal* and *Twombly* and given the Court's February 16, 2017 order. However, even if the SAC runs afoul of Rule 8, dismissal is not the proper remedy. *See Phillips*, 408 F.3d at 128 ("At base, the Rules command us never to exalt form over substance. We will therefore excuse technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party.")

## V.    CONCLUSION

For these reasons, Plaintiff prays for the court to deny Defendant's Motion For Partial Summary Judgment And Dismissal Pursuant To Rule 8 [DE 80].

Dated: Brooklyn, New York
June 10, 2017

Respectfully submitted,
/s/
Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Carol Lastorino, Esq.,
Attorneys for Defendant Forster & Garbus, LLP
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11566
Tel. (516) 357-3000
Fax. (516) 357-3333
carol.lastorino@rivkin.com


Dated:  Brooklyn, NY
        June 10, 2017
         /s/
        Ahmad Keshavarz